No. 2-08-1210    Filed: 8-25-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re MARRIAGE OF | ) | Appeal from the Circuit Court |
| DEBORAH L. HALL, | ) | of Lake County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 02--D--2321 |
| | ) | |
| PAUL HALL, | ) | Honorable |
| | ) | Jane D. Waller, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the opinion of the court:

Petitioner, Deborah L. Hall, appeals an order from the Lake County circuit court denying her petition to modify or reform judgment pursuant to sections 2--1401 and 13--206 of the Code of Civil Procedure (the Code) (735 ILCS 5/2--1401; 13--206 (West 2008)). Petitioner raises three issues on appeal: (1) whether the trial court erred by requiring her to show grounds for vacating the trial court's judgment of dissolution of marriage as a prerequisite to allowing reformation of the marital settlement agreement incorporated into the judgment; (2) whether a 10-year limitations period applies, pursuant to section 13--206 of the Code, to allow petitioner to reform the parties' marital settlement agreement, based on a mutual mistake of fact; and alternatively (3) whether the language of the parties' marital settlement agreement can be construed to require all of the retirement assets of respondent, Paul Hall, including his pension funds, to be divided equally between the parties. For the reasons set forth below, we reverse and remand.

The record reflects that petitioner and respondent were married on May 31, 1975. Two children were born of the marriage, both of whom have now reached majority. On August 31, 2004, the trial court entered a judgment of dissolution of marriage. The judgment incorporated a marital settlement agreement, which was entered into by the parties on the same day.

At the time of the dissolution, respondent was employed by Kraft Foods as chief global food safety officer, and he had worked there for more than 15 years. While employed at Kraft Foods, respondent had acquired a vested interest in two retirement plans, a thrift plan and a pension plan. Prior to his employment at Kraft Foods, respondent was employed for approximately seven years at Anheuser-Busch, where he acquired a vested interest in two retirement plans, a deferred income stock purchase and savings plan and a pension plan. On the date of the judgment of dissolution of marriage, all of respondent's employment at both Kraft Foods and Anheuser-Busch was during his marriage to petitioner, and respondent acknowledged that his entire interest in the Anheuser-Busch deferred compensation plan and pension plan, as well as his interest in the Kraft Foods thrift plan and pension plan up to that point, had accrued during the marriage and were marital assets. Petitioner was not employed outside the home for approximately 20 years and did not have a college education or any formal training in any trade or profession. Petitioner also had no retirement assets of her own.

The parties appeared in court on August 31, 2004, for trial. The trial court conducted a pretrial conference with both parties' attorneys and a child representative. Following the conference, the parties entered into a marital settlement agreement for the division of nonretirement marital assets, which totaled $890,825.44. Petitioner was awarded $455,421.44, which amounted to approximately one-half of the marital assets, plus $10,000 as a result of a charge of dissipation against respondent. Respondent was awarded the remaining $423,404.

Article XVIII of the marital settlement agreement addressed the division of respondent's retirement plans. The article provided, in relevant part:

"18.1 [Respondent] is a plan participant in the Anheuser-Busch Deferred Income Stock Purchase and Savings Plan, and is also a plan participant in a second retirement plan referred to as the Kraft Foods Thrift Plan. With respect to the Anheuser-Busch Deferred Income Stock Purchase and Savings Plan, the parties agree to enter into a Qualified Domestic Relations Order [(QDRO)] providing for the distribution of fifty percent (50%) of the account balance to [petitioner], as alternate payee, as of the date of entry of this [judgment of dissolution of marriage]. With respect to the Kraft Foods Thrift Plan, the parties agree to enter into a [QDRO] providing for the distribution of fifty percent (50%) of the account balance to [petitioner], as alternate payee, as of the date of entry of this [judgment of dissolution of marriage].

\* \* \*

18.4 It is the intention of this [article] that [petitioner] is to receive fifty percent (50%) of the account balance of each of [respondent's] retirement plans valued as of the date of the entry of this [judgment of dissolution of marriage]."

Petitioner subsequently noticed that she had not received benefits from either of respondent's pension plans, and her attorney advised respondent's attorney that petitioner had not received distribution of the pension benefits. Petitioner then filed her petition to modify or reform the dissolution judgment, alleging that respondent's two pension plans had been omitted from the marital settlement agreement due to a mutual mistake of fact and requesting that the marital settlement agreement be reformed to allow for an equal division of the pension plans as of the date of the entry of the judgment.

After the trial court denied respondent's motion to dismiss petitioner's petition, a trial was conducted on September 9, 2008, and October 2, 2008. Respondent testified at trial that the omission of his pension plans was intentional, the parties never agreed to include the pension plans in their settlement, and he never would have agreed to a settlement that included the pension plans as part of the division of assets. Petitioner testified that she never would have agreed to a settlement that did not include the pension plans as part of the division. On October 3, 2008, the trial court denied petitioner's petition. In reaching its determination, the trial court concluded that, before it could reach the issue of whether the pension plans were omitted from the marital settlement agreement as a result of a mutual mistake, the petition to modify or reform the judgment must first establish a basis to vacate the judgment pursuant to section 2--1401 of the Code. According to the trial court, because petitioner filed her petition more than two years after the judgment was entered, she could prevail on a section 2--1401 petition only if she established that the defect in the judgment was a result of duress, disability, or fraudulent concealment. The trial court concluded that, because petitioner failed to establish that the defect was a result of duress, disability, or fraud, it was unable to vacate the judgment pursuant to section 2--1401. The trial court further found that, even though it was not required to reach the issue of mutual mistake, the evidence was insufficient to establish that the omission of respondent's pension plans was the result of a mutual mistake. Petitioner timely appealed after her motion to reconsider was denied.

The first issue raised on appeal is whether the trial court erred in requiring petitioner to establish that the judgment of dissolution of marriage must be vacated pursuant to section 2--1401 of the Code as a prerequisite to including respondent's pension plans in the judgment. Petitioner argues that the trial court erred in requiring her to establish that the pension plans were omitted from the marital settlement agreement as a result of disability, duress, or fraudulent concealment, because

her petition sought to reform the marital settlement agreement to reflect the parties' true intent, not to modify or revoke the dissolution judgment. Therefore, according to petitioner, the court may reform a written marital settlement agreement 10 years from the date the judgment was entered. Respondent counters that the trial court must vacate or reopen the judgment of dissolution pursuant to section 2--1401 before it can modify the marital settlement agreement, because that agreement was incorporated into the judgment. According to respondent, because the judgment of dissolution was entered into more than two years ago, section 2--1401 required petitioner to establish that any mistake in the marital settlement agreement resulted from disability, duress, or fraudulent concealment.

Section 510(b) of the Illinois Marriage and Dissolution of Marriage Act (the Act) provides that "[t]he provisions as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this State." 750 ILCS 5/510(b) (West 2008). In other words, after 30 days, provisions in a marital settlement agreement that constitute property distribution are generally not modifiable or revocable, and, therefore, a trial court has jurisdiction to modify property distribution only if circumstances exist to reopen a judgment as in other civil cases. In re Marriage of Hubbard, 215 Ill. App. 3d 113, 116 (1991). Accordingly, whether a trial court has jurisdiction to modify a property distribution provision pursuant to section 510(b) of the Act should be construed within the confines of section 2--1401 of the Code. In re Marriage of Miller, 363 Ill. App. 3d 906, 913 (2006). Nonetheless, a trial court retains indefinite jurisdiction to enforce the terms of a judgment. Hubbard, 215 Ill. App. 3d at 116. Whether a trial court has jurisdiction is a question of law, subject to de novo review. Allen v. Allen, 343 Ill. App. 3d 410, 412 (2003).

In <u>Allen</u>, the reviewing court addressed whether, more than 30 days after entry of a dissolution judgment, the trial court had jurisdiction to amend a QDRO entered pursuant to the judgment. <u>Allen</u>, 343 Ill. App. 3d at 412. The parties in <u>Allen</u> divorced after 18 years of marriage, and the judgment of dissolution provided that the respondent's pension benefits be divided pursuant to a formula provided in the judgment. <u>Allen</u>, 343 Ill. App. 3d at 411. Shortly after the judgment, the trial court entered a QDRO enforcing the terms of the judgment, but it used a formula for the pension calculation that differed from the one provided in the judgment. After the respondent's retirement, the petitioner applied for benefits under the pension plan, and the pension administrator calculated the respondent's share pursuant to the formula contained in the QDRO rather than the one contained in the judgment. <u>Allen</u>, 343 Ill. App. 3d at 412. When the petitioner discovered the difference between the formulae, she filed a petition to amend the QDRO to reflect the formula contained in the judgment, which the trial court granted. <u>Allen</u>, 343 Ill. App. 3d at 412. On appeal, the respondent argued that the trial court did not have jurisdiction to enter the amended QDRO because modifying the QDRO was the equivalent of modifying the judgment. The reviewing court disagreed and affirmed the trial court's order amending the QDRO. <u>Allen</u>, 343 Ill. App. 3d at 412. The reviewing court held that the trial court had indefinite jurisdiction to enforce the judgment. <u>Allen</u>, 343 Ill. App. 3d at 412. The reviewing court further stated:

"The amendment to the QDRO changed the formula to conform to the judgment. This change did not impose new or different obligations on the parties. *** The amendment to the QDRO was necessary to enforce the petitioner's rights and obligations with respect to the pension. Since the amended order only enforced the provisions of the judgment, the court had jurisdiction to make the modifications." <u>Allen</u>, 343 Ill. App. 3d at 413.

The court's rationale in Allen is helpful to the current matter, and we conclude that the trial court had jurisdiction to enforce the marital settlement agreement without first establishing a basis to vacate the dissolution judgment pursuant to section 2--1401 of the Code. Here, petitioner is not seeking to impose new or different obligations on the parties. Rather, she is attempting to enforce the parties' rights and obligations with respect to respondent's retirement plans, which were clearly laid out in the marital settlement agreement and judgment of dissolution. See Allen, 343 Ill. App. 3d at 413. Further, we recognize that petitioner labeled her filing a "petition to modify or reform judgment" and cited section 2--1401 of the Code. However, a filing's substance, not its title, determines its character, and in this case, the substance of the petition was to enforce the judgment in accordance with the parties' intent and not to impose new or different obligations on the parties. See Miller, 363 Ill. App. 3d at 911, citing Sarkissian v. Chicago Board of Education, 201 Ill. 2d 95, 102 (2002) ("[i]t is a motion's substance, not its title, that determines the motion's character"). Accordingly, because petitioner is seeking to enforce the judgment, the trial court had jurisdiction to enter an order enforcing the terms of the marital settlement agreement without first establishing a basis to vacate the judgment pursuant to section 2--1401. See Allen, 343 Ill. App. 3d at 413.

The next issue on appeal is whether, pursuant to the marital settlement agreement, the true intent of the parties was to equally divide each of respondent's retirement accounts or whether the parties intended to include only the Anheuser-Busch deferred income stock purchase and savings plan and the Kraft Foods thrift plan while omitting the respective pension plans. Petitioner argues that the language of the marital settlement agreement clearly reflects the parties' intent to equally divide all of respondent's retirement plans that accrued during the marriage. We agree.

Illinois law is clear that rules of contract construction are applicable to the interpretation of provisions in a marital settlement agreement, and the primary objective is to effectuate the intent of

the parties. In re Marriage of Carrier, 332 Ill. App. 3d 654, 658 (2002). When the terms of the agreement are unambiguous, the intent of the parties is determined solely from the language of the agreement. In re Marriage of Wassom, 352 Ill. App. 3d 327, 330-31 (2004). Whether the agreement reflected the actual intent of the parties is a question of law we review de novo. Allen, 343 Ill. App. 3d at 413, citing Gray v. Mundelein College, 296 Ill. App. 3d 795, 803 (1998).

Here, article 18.4 of the marital settlement agreement clearly provides that the parties intended for petitioner to receive "fifty percent (50%) of the account balance of each of [respondent's] retirement plans" valued at the date the judgment was entered. This language is unambiguous, and we can ascertain the parties' intent solely from that language. See Wasson, 352 Ill. App. 3d at 331. Accordingly, we hold that the parties intended for petitioner to receive 50% of the account balance of each of respondent's retirement plans, including his Anheuser-Busch and Kraft pension funds.

Moreover, and despite respondent's argument to the contrary, the language contained in article 18.4 does not conflict with article 18.1. As outlined above, article 18.1 provided that respondent would enter into a QDRO giving petitioner 50% of his Anheuser-Busch deferred income stock purchase and savings plan and Kraft Foods thrift plan. This provision outlined the rights and obligations of the parties with respect to those retirement plans and specifically required the parties to enter into a QDRO. However, this provision did not address--much less limit--the rights and obligations of the parties with respect to any other retirement plan, including the pension plans. If the parties intended article 18.1 to provide that petitioner was entitled to 50% of the account balance of only those two specific retirement plans, and was not entitled to an interest in any other retirement plan, then the parties could have added specific language to article 18.1 to reflect that intention. See Wassom, 352 Ill. App. 3d at 331 (holding that, if the parties intended a provision to limit the

husband's health-care-expense obligations to apply only to a child and not to the wife, the marital settlement agreement could have used specific language to express that intent). The parties could have also added language to article 18.4 to provide that it was the parties' intent that petitioner receive 50% of each of respondent's retirement plans "referenced" or "listed" in article 18.1, had they so desired. Accordingly, we conclude that, pursuant to the unambiguous language contained in article 18.4 of the marital settlement agreement, the parties intended for petitioner to receive 50% of "each of [respondent's] retirement plans," including his Anheuser-Busch and Kraft Foods pension plans.

For the foregoing reasons, we reverse the judgment of the Lake County circuit court and remand this matter for further proceedings consistent with this opinion.

Reversed and remanded.

McLAREN, J., concurring.

JUSTICE BOWMAN, specially concurs:

I concur with the majority that petitioner was seeking to enforce the marital settlement agreement rather than seeking to vacate the dissolution judgment, pursuant to section 2--1401. I also concur with the majority in its ultimate decision to reverse the judgment of the trial court and to remand the cause. However, I disagree with the majority that article 18.4 of the marital settlement agreement is unambiguous.

When interpreting a marital settlement agreement, a court seeks to give effect to the parties' intent. Allton v. Hintzsche, 373 Ill. App. 3d 708, 711 (2007). The language used in the agreement is usually the best indication of the parties' intent. Allton, 373 Ill. App. 3d at 711. When the terms of the agreement are unambiguous, we determine the parties' intent solely from the language of the agreement. Allton, 373 Ill. App. 3d at 711. "An ambiguity exists when an agreement contains

language that is susceptible to more than one reasonable interpretation." Allton, 373 Ill. App. 3d at 711. " 'Where the language is ambiguous, parol evidence may be used to decide what the parties intended.' " Allton, 373 Ill. App. 3d at 711, quoting In re Marriage of Michaelson, 359 Ill. App. 3d 706, 714 (2005). All the provisions of the agreement should be read as a whole to interpret it and to determine whether an ambiguity exists. Rich v. Principal Life Insurance Co., 226 Ill. 2d 359, 371 (2007). An ambiguity is not created simply because the parties disagree on the meaning of any provision. Rich, 226 Ill. 2d at 371-72.

In this case, I find that article 18.4 of the marital settlement agreement is susceptible to more than one reasonable interpretation and therefore is ambiguous. In determining that an ambiguity exists, I read the marital settlement agreement and article XVIII as a whole. Article XVIII is entitled "Retirement Plans," and begins in article 18.1 to name two specific plans: the Anheuser-Busch deferred income stock purchase and savings plan and the Kraft Foods thrift plan. The parties agreed to enter into a QDRO to distribute the plans equally. Article 18.2 then states that respondent was to obtain current account statements for "each of these retirement plans." Article 18.3 then states that respondent was responsible for preparing the QDRO for "each of these retirement plans." Article 18.4 then provides that it was the parties' intention to divide the "balance of each of [respondent's] retirement plans" equally. Because the agreement already stated in section 18.1 that the two identified plans would be divided equally and the subject of a QDRO, I believe that one could reasonably interpret that articles 18.2, 18.3, and 18.4 referred to other retirement plans. However, because none of the provisions of article XVIII makes clear that additional retirement plans exist, I believe that one also could reasonably interpret article 18.4 as referring solely to the two plans named in article 18.1. Accordingly, I believe that article 18.4 is ambiguous and that the judgment of the trial court should be reversed and the cause remanded for the trier of fact to determine whether

the parties intended for the equal division of the pension plans. Given the fact that the parties had testified that they intended to divide the marital property equally and that the pensions in question were marital property, I would predict that respondent would have a difficult time prevailing, but I do believe that the question is proper for the fact finder.