No. 2—10—0230
Opinion filed May 12, 2011

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| LOREE HENDRY, | ) | of McHenry County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 07—DV—637 |
| | ) | |
| MICHAEL HENDRY, | ) | Honorable |
| | ) | Michael J. Chmiel, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Presiding Justice Jorgensen and Justice Burke concurred in the judgment and opinion.

**OPINION**

Petitioner, Loree Hendry, appeals the trial court's order denying her petitions to enforce and to modify and/or vacate the judgment of dissolution of marriage between herself and respondent, Michael Hendry, arguing that she was entitled to half of two of Michael's retirement accounts. On appeal, Loree argues that (a) the trial court erred by interpreting the parties' marital settlement agreement (MSA) as denying her a share of Michael's Pacific Life deferred compensation plan; and (b) the trial court erred by failing to consider the case law on mutual and excusable mistake in denying Loree's petition to modify and/or vacate the judgment of dissolution of marriage. We affirm in part, reverse in part, and remand for further proceedings.

I. FACTS

Only the facts necessary to understanding the issues in this appeal will be recited here. The record reflects that the parties married in 1986. On October 27, 2008, the trial court entered a judgment of dissolution of marriage. At that time, Michael had been an executive at Pacific Life Insurance Company for over 10 years. The judgment incorporated an MSA that the parties entered into on the same day the judgment was entered. Section 9 of the MSA addressed the distribution of the parties' retirement accounts. The section provided in relevant part:

"9.6  Pacific Life SERP Account  MICHAEL currently has an account with his employer, Pacific Life that is termed either [*sic*] deferred compensation and is known as the Pacific Life SERP. That this account is now worth approximately $295,000.00. That said Plan has been represented to be a non-vested account of MICHAEL's. That according to MICHAEL that account will not vest until MICHAEL's years of service plus age equals 75. LOREE agrees to waive all right, title and interest to any contributions made during the marriage to the Pacific Life SERP and the same is awarded to MICHAEL as his property free and clear of any claims of LOREE.

9.7  Retirement Accounts  MICHAEL currently has the following retirement accounts in place exclusive of the Pacific Life SERP which was discussed in 9.6: A Pacific Life RISP in the amount of $341,760.00; a Pacific Life Employee Retirement Plan in the amount of $70,189.00; an E-Trade IRA in the amount of approximately $25,000. ***

A. The parties shall value the tax deferred assets and pensions with the exception of the Pacific Life SERP, and divide the accounts equally. That the date of valuation will be September 30, 2008. ***

B. *** That said equalization shall be accomplished by either a [qualified domestic relations order] or a direct Rollover transfer into one of LOREE's or MICHAEL's existing retirement accounts, at the discretion of the custodian of the Pacific Life RISP."

On April 2, 2009 Loree filed a petition for a rule to show cause, alleging that she was entitled to a share of the Pacific Life voluntary deferred compensation plan. The trial court dismissed the petition without prejudice.

On September 24, 2009, Loree filed a petition to enforce the judgment of dissolution of marriage (petition to enforce), pursuant to sections 508 and 511 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/508, 511 (West 2008)). The petition to enforce alleged that the parties' intent in entering into the MSA was to split equally all marital assets, including "non-qualified or retirement plans." Loree sought a qualified domestic relations order (QDRO) to enforce the MSA.

On October 5, 2009, Loree filed a petition to modify and/or vacate the judgment of dissolution of marriage (petition to modify and/or vacate), pursuant to section 510(b) of the Act (750 ILCS 5/510(b) (West 2008)) and section 2—1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1401 West 2008)). Count I alleged, *inter alia*, that the failure to include the Pacific Life deferred compensation plan in the "final Judgment for Dissolution of Marriage was a typographical mistake that was either to be corrected by the all inclusive language of Paragraphs of [*sic*] 9.7(A) and (B) or was merely a typographical error."

Count II, alleging fraud, stated that Michael misrepresented that he would not be vested in the Pacific Life supplemental executive retirement plan (SERP Plan) until his years of service with his employer plus his age equaled 75. In reality, Michael knew that he was 100% vested when the

judgment of dissolution of marriage was entered, and he concealed this information from Loree by failing to provide her with discovery documents and by representing to her that he was not vested. Count II further alleged:

"[Michael's] representations with relation to the Pacific Life SERP Plan were Fraudulent Concealment by [Michael] where [he] knew that this was a material representation and would induce detrimental reliance by [Loree] in waiving this Plan. That but for the fraudulent concealment of the fact that [Michael] was vested in the SERP Plan six (6) years after he was employed with the Pacific Life Insurance Company, [Loree] would never have waived her rights under that Plan."

Loree asked the trial court to award her (1) 50% of the value of the SERP Plan as valued on September 30, 2008; (2) attorney fees and costs; and (3) "other and further relief as the Court deems necessary and proper."

Loree attached to her petition to modify and/or vacate an affidavit that stated in part:

"I agreed to waive my interest in the Pacific Life SERP Account because my husband, MICHAEL HENDRY, advised me that he would only be vested in such Plan when his years of service with the Pacific Life Insurance Company plus his age equaled seventy-five (75). [Michael's] attorney, Jeffrey Rifkin, also verified that this was the reason he was asking that the Pacific Life SERP Plan be excluded, he emphasized that MICHAEL HENDRY was not vested in the same."

In Michael's response to Loree's petition to modify and/or vacate, Michael denied that he was vested in the SERP Plan. In addition, Michael pled as an "Affirmative Defense" to both counts that the MSA did "not include any information that was not already known by [Loree] or could have been

ascertained by [Loree] with due diligence prior to the entry of the judgment for order of dissolution of marriage." Michael also asserted that Loree's petition failed to sufficiently allege facts establishing fraud or concealment.

On March 1, 2010, the trial court denied Loree's petitions to enforce and to modify and/or vacate, finding, in part:

"[This court] has jurisdiction over this matter in terms of its subject and parties. The Court further finds that [Michael] has the better argument under the Petition to Enforce and the Petition to Modify, in that the claim being asserted by [Loree] in these post-decree pleadings could have been asserted or otherwise clarified that which was presented to the Court in proving up or drafting the Judgment for Dissolution of Marriage ('the Judgment') which was ultimately entered by the Court on October 27, 2008. Further, the Court finds that by operation of law, all such claims were merged into the Judgment and was and is clear on its face, and that no further relief along the lines suggested in either petition is warranted."

Loree filed this timely appeal.

## II. ANALYSIS

### A. Jurisdiction

We first address Michael's argument that we lack jurisdiction to address this appeal, because Loree failed to file a motion to reconsider (a postjudgment motion) or a notice of appeal within 30 days of the trial court's dismissal without prejudice of her petition for a rule to show cause, as mandated by Illinois Supreme Court Rule 303(a) (eff. May 1, 2007). Michael notes that Loree waited 57 days to file her petition to enforce and even longer to file her petition to modify and/or vacate.

We disagree with Michael because Loree is not appealing the denial of her petition for a rule to show cause; rather, she is appealing the denials of her petition to enforce the judgment of dissolution marriage and her petition to modify and/or vacate the judgment of dissolution of marriage. A trial court retains indefinite jurisdiction to enforce the terms of a judgment of dissolution of marriage. See *In re Marriage of Hall*, 404 Ill. App. 3d 160, 164 (2010). In addition, a petition for modification of a dissolution judgment initiates a new proceeding and is effectively a new pleading. *In re Marriage of Semonchik*, 315 Ill. App. 3d 395, 401 (2000). Because Loree filed her notice of appeal within 30 days after entry of the denials of her petitions, her notice of appeal was timely. See Ill. S. Ct. R. 303(a) (eff. May 1, 2007).

Michael cites *Village of Glenview v. Buschelman*, 296 Ill. App. 3d 35 (1998), to support his argument. The facts in *Buschelman* have nothing to do with the facts here. In *Buschelman*, the appellant failed to file a notice of appeal challenging an order granting the appellee's motion for summary judgment. *Buschelman*, 296 Ill. App. 3d at 38. Subsequently, the appellant filed a petition to vacate, which was denied, and a supplemental petition to vacate. *Buschelman*, 296 Ill. App. 3d at 41. The appellate court held that it would not address the "propriety" of the trial court's grant of summary judgment, because the appellant failed to file a notice of appeal within 30 days of entry of the judgment. *Buschelman*, 296 Ill. App. 3d at 38. Regarding the petition to vacate, the appellate court held that the denial of such a petition is a final order. *Buschelman*, 296 Ill. App. 3d at 39. Thus, because the appellant failed to file a notice of appeal from the denial of his original petition, the appellate court would not address the trial court's denial of his supplemental petition. *Buschelman*, 296 Ill. App. 3d at 42.

In contrast to *Buschelman*, here Loree seeks review of orders from which she filed a timely notice of appeal. Thus, *Buschelman* does not support Michael's argument that we lack jurisdiction.

We now address the merits of Loree's appeal.

### B. Pacific Life Deferred Compensation Plan

The first issue on appeal is whether, pursuant to the MSA, the true intent of the parties was to equally divide each of Michael's retirement accounts or whether the parties intended to include only the retirement accounts listed in section 9.7, omitting the Pacific Life deferred compensation plan. Loree argues that the trial court erred by interpreting the parties' MSA as denying her a share of the Pacific Life deferred compensation plan. Loree argues that the language of sections 9.7(A) and (B) of the MSA reflects the parties' intent to equally divide the plan. We agree.

It is well settled that the rules of contract construction are applicable to the interpretation of an MSA and that a court's primary objective is to give effect to the intent of the parties. *Hall*, 404 Ill. App. 3d at 166. The intent of the parties must be determined only by the language of the agreement, absent an ambiguity. See *Blum v. Koster*, 235 Ill. 2d 21, 33 (2009). Because the interpretation of an MSA is a question of law, we review it *de novo*. See *Blum*, 235 Ill. 2d at 33.

This court recently decided a similar issue in *Hall*, 404 Ill. App. 3d 160. In *Hall*, the parties' MSA listed two of the former husband's retirement plans but omitted two other retirement plans. *Hall*, 404 Ill. App. 3d at 162-63. The MSA in *Hall* also provided that "[i]t is the intention of this [article] that [the former wife] is to receive fifty percent (50%) of the account balance of each of [the former husband's] retirement plans valued as of the date of the entry of this [judgment of dissolution of marriage]." *Hall*, 404 Ill. App. 3d at 163. We held that the true intent of the parties was not only to include the omitted retirement plans, but also to equally divide them between the parties. *Hall*,

404 Ill. App. 3d at 166. Further, the trial court retained jurisdiction to order such distribution, consistent with the judgment of dissolution, because the court was enforcing the MSA rather than modifying or revoking it, pursuant to section 510(b) of the Act and section 2—1401 of the Code. *Hall*, 404 Ill. App. 3d at 164.

Here, section 9.7(A) of the MSA clearly provides that the parties intended to "value the tax deferred assets and pensions with the exception of the Pacific Life SERP, and *divide the accounts equally*." (Emphasis added.) As we stated in *Hall*, "[t]his language is unambiguous, and we can ascertain the parties' intent solely from that language." *Hall*, 404 Ill. App. 3d at 166. We are further guided by the "well-known maxim of construction, *inclusio unius est exclusio alterius,* or the inclusion of one is the exclusion of the other." *Schanowitz v. State Farm Mutual Automobile Insurance Co.*, 299 Ill. App. 3d 843, 848 (1998). By failing to name the Pacific Life deferred compensation plan with the SERP Plan, it is clear that the parties did not intend to exclude the former from being divided equally between the parties. Thus, we hold that the parties intended for Loree to receive 50% of the account balance of each of Michael's tax-deferred assets and pensions including the Pacific Life deferred compensation plan, with the exception of the SERP Plan. Pursuant to section 9.7(A) of the parties' MSA, "the date of valuation will be September 30, 2008." Thus, the trial court erred by denying Loree's petition to enforce the judgment of dissolution of marriage. Therefore, we reverse the trial court's judgment denying Loree's petition to enforce, and we remand for further proceedings consistent with this opinion.

Michael argues that Loree is actually attempting to modify rather than enforce the judgment of dissolution. Michael further argues that Loree's petition to modify and/or vacate and its attached affidavit failed to establish a basis to include the Pacific Life deferred compensation plan in the

judgment of dissolution and the incorporated MSA. Michael fails to understand that we are not modifying the judgment of dissolution and the incorporated MSA; rather, we are enforcing it in accordance with the parties' intent. We are not imposing new or different obligations on the parties. Thus, Loree's petition to enforce the judgment of dissolution was sufficient regarding this issue.

Citing section 502 of the Act, Michael argues that a court may not modify a settlement agreement unless it is unconscionable. 750 ILCS 5/502 (West 2008). Because we are enforcing, not modifying, the settlement agreement, section 502 of the Act does not apply.

Lastly, Michael argues that Loree cannot challenge the validity of the judgment of dissolution, because she accepted the benefits given to her by the MSA. Michael cites *In re Marriage of Yelton*, 286 Ill. App. 3d 436 (1997), to support this argument. *Yelton* is not relevant to this case. In *Yelton*, the wife attempted to voluntarily dismiss her petition for dissolution of marriage after the trial court vacated the parties' original distribution of property in accordance with an MSA. *Yelton*, 286 Ill. App. 3d at 443. Here, the parties' property distribution has not been vacated and Loree does not seek dismissal of the petition for dissolution of marriage. Thus, *Yelton* is inapplicable here.

## C. The SERP Plan

Next, Loree argues that the trial court erred by denying her petition to modify and/or vacate.[1]

---

[1]Curiously, Loree does not seek to vacate and set aside the entire agreement and start from square one on a new property settlement agreement but instead wants to engraft an added benefit onto the original agreement even though Michael did not agree to such a split. Loree assumes that she is entitled to pick and choose what funds she wants included in the "agreement." Loree does not cite to authority for this novel approach to allowing relief, fashioned upon one party's desires rather than an actual meeting of the minds.

Because we have already discussed the Pacific Life deferred compensation plan, we need not discuss it again here.

Loree argues on appeal that Michael *concealed* "the key fact that he was already vested in the SERP Plan." Illinois Supreme Court Rule 341(h)(7) (eff. Sept. 1, 2006) provides that the argument section of an appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Arguments that do not comply with Rule 341(h)(7) do not merit consideration on appeal and may be rejected by this court for that reason alone. See *Housing Authority v. Lyles*, 395 Ill. App. 3d 1036, 1040 (2009). In this case, Loree has failed to cite any relevant authority in support of her contention. Further, she fails to support her contention with argument beyond her bald assertion stated above. Because Loree failed to comply with Rule 341(h)(7), she has forfeited this issue on appeal.

Even if we were to consider Loree's argument on appeal, she fails to establish that Michael was, in fact, vested in the SERP Plan. As support for her contention, Loree cites to her affidavit, which contains her testimony from the dissolution-of-marriage proveup. However, it establishes only that she waived her interest in the SERP Plan because Michael told her that he was not vested. Loree's petition also alleged that page 16 of a document that was attached to Michael's response to Loree's petition for a rule to show cause, titled "Pacific Life Prerequisite Guide For Employees' Deferred Compensation (DCP) & Supplemental Executive Retirement Plan (SERP) Eligibles 2009," proved that Michael was vested after six years of service. Loree then alleged that he had more than 10 years of service prior to entering into the MSA and must have known that he was vested. However, nothing on page 16 of the document at issue established that Michael was vested and nothing established that Michael knew that he was vested. Therefore, Loree failed to establish that

Michael concealed "the key fact that he was already vested" in the plan. Thus, under any standard of review (which Loree does not relate, as required by rule), the trial court did not err by denying Loree's petition to modify and/or vacate as to the SERP Plan.

## III. CONCLUSION

For the reasons stated, we affirm in part and reverse in part the judgment of the circuit court of McHenry County, and we remand the cause.

Affirmed in part and reversed in part; cause remanded.