2015 IL App (3d) 140292

Opinion filed July 29, 2015
Modified upon denial of rehearing October 6, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2015

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| L. BRUCE FRANK, | ) | Whiteside County, Illinois |
| | ) | |
|     Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-14-0292 |
| and | ) | Circuit No. 98-D-142 |
| | ) | |
| SHIRLEY A. FRANK, n/k/a Shirley A. | ) | |
| Pearson, | ) | Honorable |
| | ) | John L. Hauptman |
|     Respondent-Appellant. | ) | Judge, Presiding |

_____

        JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
        Justice Holdridge concurred in the judgment and opinion.
        Justice Schmidt specially concurred, with opinion.

_____

**OPINION**

¶ 1        Respondent Shirley Frank, n/k/a Shirley Pearson, filed a motion to enforce the terms in a 1998 marital settlement agreement she entered into with her former husband, petitioner Bruce Frank. Shirley sought various pension benefits she claims were distributed to her per the parties' marital settlement agreement but which she did not

receive when Bruce retired. The trial court denied Shirley's petition for enforcement of judgment and her motion to reconsider. She appealed. We affirm.

¶ 2                                                            FACTS

¶ 3        Petitioner Bruce Frank and respondent Shirley Frank were married in April 1978. They had two children during the marriage. At the time of the dissolution proceedings, Bruce had worked for the railroad for 18 years. Shirley had also worked outside the home during the marriage. In April 1998, the parties executed a marital settlement agreement that resolved property distribution, maintenance, custody, child support, visitation, and medical care for the parties' youngest child, who was 16 when Shirley and Bruce divorced. The marital settlement agreement that both parties signed contained the following language in article VIII:

> "BRUCE shall have the sole right, title and interest in his pension and individual retirement plans, including but not limited to past, present and future contributions, interest and principal, whether contributed by BRUCE or his employer or both and whether unvested, partially vested, or fully vested, free and clear of any and all claims of SHIRLEY. A Qualified Domestic Relations Order will be entered which will provide SHIRLEY with $621.00 per month upon BRUCE's retirement."

¶ 4        Bruce filed a petition for dissolution of marriage on April 29, 1998, and a judgment of dissolution was entered the following day. The judgment of dissolution, which incorporated the marital settlement agreement, stated:

> "Article VIII of the parties' Separation Agreement is incorporated to the extent that it provides that BRUCE is awarded

2

all rights in and to his pension provided by the United States Railroad Retirement Board and to the extent that SHIRLEY will receive a separate payment of $621.00 per month, however, upon clarification by the plan administrator of the provisions of the pension, it appears that SHIRLEY's benefits will commence not upon BRUCE's retirement, but upon her reaching the eligibility age for retirement, upon which date she will receive her spousal pension benefits in the amount of $621.00 per month without the necessity for any qualified domestic relations order."

¶ 5    Bruce retired from the Union Pacific Railroad in June 2011. Shirley did not begin receiving pension payments and filed her petition for enforcement of judgment in February 2013. In the petition, Shirley sought entry of an order from the trial court dividing Bruce's pension per the settlement agreement.

¶ 6    A hearing took place on Shirley's petition. At the hearing, the trial court allowed Bruce to introduce evidence regarding his railroad pension and clarifying the availability of the various tiers of benefits, including Tiers 1 and 2, and the spousal annuity benefit. Bruce testified that per the Railroad Retirement Board, Shirley was eligible for $621 in spousal annuity benefits. He never discussed sharing his Tier 2 benefits with her.

¶ 7    Shirley claimed the marital settlement agreement was controlling regarding the distribution of Bruce's pension. Shirley objected to the use of parol evidence at the hearing, arguing that the language of the settlement agreement was unambiguous and should be interpreted on its own terms. Shirley testified that because she did not have her own pension, it was important that she share in Bruce's pension. It was her intent when she signed the marital

3

settlement agreement that she receive $621 from Bruce's retirement funds, presumably the Tier 2 pension. She never reviewed any materials regarding the railroad pension tiers or from the Railroad Retirement Board. Shirley did not read the judgment of dissolution or sign the modification that was presented to the court when it was entered in 1998.

¶ 8       The trial court found that an ambiguity existed between the pension provisions in the settlement agreement and the judgment of dissolution, and that the parties' intent could not be determined from the language of the two documents. The trial court admitted the parol evidence offered by Bruce and found that Bruce's evidence regarding the parties' intent was more credible than the evidence offered by Shirley's testimony. The trial court denied Shirley's petition for enforcement. She moved for reconsideration, which the trial court also denied. Shirley followed with this appeal.

¶ 9                                        ANALYSIS

¶ 10      The issue on appeal is whether the trial court erred when it denied Shirley's petition for enforcement of the marital settlement agreement. Shirley argues that the trial court erred in interpreting the settlement agreement as ambiguous and should not have considered parol evidence in reaching its determination. Shirley submits that the parties intended that she receive $621 per month when Bruce retired, as evidenced by the terms of the marital separation agreement.

¶ 11      The rules of contract interpretation apply to the interpretation of a marital settlement agreement. *In re Marriage of Hall*, 404 Ill. App. 3d 160, 166 (2010). The primary objective when interpreting an agreement is to give effect to the intent of the parties. *Hall*, 404 Ill. App. 3d at 166. A judgment of dissolution and martial settlement agreement are to be construed as a single agreement. *Kirschenbaum v. Northwestern University*, 312 Ill. App. 3d 1017, 1029 (2000).

4

The best indicator of the parties' intent is the language used in marital settlement agreement. *Allton v. Hintzsche*, 373 Ill. App. 3d 708, 711 (2007).

¶ 12 When the terms of the agreement are unambiguous, intent must be determined solely from the agreement's language. *Hall*, 404 Ill. App. 3d at 166. When an agreement is ambiguous, the court may hear parol evidence to decide the parties' intent. *In re Marriage of Dundas*, 355 Ill. App. 3d 423, 426 (2005). An ambiguity exists where the language of an agreement is susceptible to more than one reasonable interpretation. *Allton*, 373 Ill. App. 3d at 711. This court reviews a trial court's interpretation of a marital settlement agreement *de novo*. *Dundas*, 355 Ill. App. 3d at 426.

¶ 13 A contract is modified when there is a change in one or more aspects which introduces new elements into the contract's details but leaves its general purpose and effect undisturbed. *Urban Sites of Chicago, LLC v. Crown Castle USA*, 2012 IL App (1st) 111880, ¶ 36. Modification generally occurs when the parties agree to change a provision in the contract or add obligations but want to leave the nature of the original agreement intact. *Urban Sites of Chicago, LLC*, 2012 IL App (1st) 111880, ¶ 36. For the modification of a contract to be valid, it must meet the requirements for the creation of a contract, including offer, acceptance and consideration. *Urban Sites of Chicago, LLC*, 2012 IL App (1st) 111880, ¶ 35. A party cannot *ex parte* modify a contract without the knowledge and consent of the other party. *Urban Sites of Chicago, LLC*, 2012 IL App (1st) 111880, ¶ 35.

¶ 14 The record is clear that Shirley was unrepresented by counsel during negotiations regarding the marital settlement agreement, did not attend the dissolution proceeding where the trial court entered the judgment of dissolution modifying the marital settlement agreement, and was not a party to the modification regarding her share of and eligibility for the spousal annuity

5

benefit. The changes in the pension distribution introduced new elements into the agreement and the trial court should have required that Shirley approve them. It is undisputed that she did not. We thus consider that the modification was invalid. It was error, therefore, for the trial court to consider parol evidence at the hearing on Shirley's petition to enforce the judgment.

¶ 15    Similarly, it was error for the trial court to hear parol evidence regarding the intent of the parties regarding Bruce's pension benefits. The marital settlement agreement expressly provided that Shirley waived any interest in Bruce's pension and that she was entitled only to the spousal annuity benefit of $621 per month. The waiver language was incorporated into the judgment of dissolution, which reiterated that Shirley waived "all rights in and to" Bruce's pension. Because there was no ambiguity in the language of the agreement, the trial court's reliance on parol evidence was in error on this point as well. However, we can affirm the trial court for any reason set forth in the record. *In re Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 33 (quoting *Mutual Management Services, Inc. v. Swalve*, 2011 Il App (2d) 100778, ¶ 11).

¶ 16    Some federal benefits, including Tier 1 railroad pensions and Social Security payments, may not be divided directly or used as an offset in a marital property distribution. *In re Marriage of Crook*, 211 Ill. 2d 437, 449-50 (2004); *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 582 (1979). Principles of federal preemption prevent state courts from considering these federal pension benefits in dissolution proceedings. *Crook*, 211 Ill. 2d at 444. Tier 2 railroad benefits, however, may be considered by the courts in marital property distributions. See *Tarbet v. Tarbet*, 647 N.E.2d 254, 256 (Ohio Ct. App. 1994).

¶ 17    In this case, as discussed above, Shirley waived any right she may have had in Frank's Tier 2 benefits per the marital settlement agreement and the judgment of dissolution. That waiver remained unchanged by the modifications. Therefore, although the trial court had the

6

authority under federal law to divide Bruce's Tier 2 benefits, it was precluded from doing so due to Shirley's waiver of the benefits as stated in the marital settlement agreement and judgment of dissolution. The judgment of dissolution, while a unilateral modification of the parties' marital settlement agreement, was consistent with the requirements of the railroad pension and the parties' agreement.

¶ 18　　　　The specific changes the trial court made in modifying the parties' agreement were that Shirley would not be eligible for the spousal annuity benefit until she reached full retirement age of 66 and that she must be unmarried to remain eligible.　Pursuant to the Railroad Retirement Act, these requirements must be met before Shirley can receive the spousal annuity provided for in the parties' marital dissolution proceedings and any contrary terms would have been rejected by the plan administrator.　So to that end, the trial court's unilateral modification did nothing more than bring the marital settlement agreement into conformity with federal law.　We find the trial court did not err when it denied Shirley's motion to enforce the judgment of dissolution.

¶ 19　　　　For the foregoing reasons, the judgment of the circuit court of Whiteside County is affirmed.

¶ 20　　　　Affirmed.

¶ 21　　　　JUSTICE SCHMIDT, specially concurring.

¶ 22　　　　I concur in the judgment, but I disagree with the majority's finding that the court improperly considered parol evidence. *Supra* ¶ 15.

¶ 23　　　　As the majority correctly states, the court may consider parol evidence only where the agreement is ambiguous. *Supra* ¶ 12; *Richard W. McCarthy Trust v. Illinois Casualty Co.*, 408 Ill. App. 3d 526, 535 (2011) (citing *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007)).　An ambiguity exists where the language of an agreement is susceptible to more than one reasonable

7

interpretation. *Richard W. McCarthyTrust*, 408 Ill. App. 3d at 535. For the following reasons, I would find that the agreement was ambiguous; thus, the court did not err in considering parol evidence to determine the parties' intent. The agreement, in relevant part, stated:

> "BRUCE shall have the sole right, title and interest in his pension and individual retirement plans, including but not limited to past, present and future contributions, interest and principal, whether  contributed by BRUCE of his employer or both and whether unvested, partially vested, or fully vested, free and clear from any and all claims of SHIRLEY. A Qualified Domestic Relations Order (QDRO) will be entered which will provide SHIRLEY with $621.00 per month upon BRUCE's retirement."

¶ 24     That paragraph of the agreement is internally inconsistent. The first sentence provides Bruce with sole right to his pension. However, the second sentence grants some of the Bruce's pension to Shirley. If Bruce had sole rights to his pension, there would be no need for the the court to enter a QDRO. Based on the language of the provision, a reasonable person could interpret the contract to mean that Shirley was entitled to Bruce's Tier 2 pension at the time of Bruce's retirement. On the other hand, a reasonable person could also conclude that Bruce was entitled to keep his entire Tier 2 benefits and that Shirley would receive spousal annuity benefits. Therefore, the court correctly considered parol evidence to determine the parties' intent.

¶ 25     The court reasonably concluded that the parties intended that Shirley would receive spousal annuity benefits in the amount of $621 per month and that Shirley waived all rights in Bruce's pension. The parol evidence established that in exchange for waiving rights in Bruce's pension, Shirley received the marital residence, maintenance from Bruce, and sole right to her

8

IRAs and mutual funds. Despite the fact that Bruce had custody of the parties' 16-year-old son, Shirley was not required to pay child support. Moreover, the parties were involved in settlement negotiations of a civil suit against Dow Corning; Shirley was to receive 66% of the final settlement.

¶ 26    The fact that Shirley's later remarriage rendered her unqualified to receive the spousal annuity is something beyond the control of both Bruce and the trial court.