2024 IL App (1st) 231161-U

SECOND DIVISION
May 21, 2024

No. 1-23-1161

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| *In re* the Marriage of | ) | Appeal from the |
| | ) | Circuit Court of |
| WILLIAM PRUENTE, | ) | Cook County. |
| | ) | |
|     Petitioner-Appellee, | ) | |
| | ) | |
|     and | ) | No. 12 D 009805 |
| | ) | |
| DAWN PRUENTE, | ) | Honorable |
| | ) | Andrea Webber, |
|     Respondent-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*: The judgment of the circuit court of Cook County is affirmed; respondent's petition to enforce judgment was a *de facto* motion to modify the judgment because the motion sought to engraft a new responsibility on petitioner; the trial court had jurisdiction to amend the Qualified Illinois Domestic Relations Calculation Court Order to reflect the change in petitioner's pension.

¶ 2    In October 2013, the circuit court of Cook County entered a judgment of dissolution of

the marriage of Dawn and William Pruente which incorporated a marital settlement agreement

(MSA). William was a Chicago Police officer. The trial court entered a Qualified Illinois

Domestic Relations Order (QUILDRO) with regard to William's pension and provided that Dawn was entitled to 50% of William's pension.

¶ 3    In 2022, the pension board notified William it was revoking his monthly pension benefits due to his conviction of a felony connected to his job as a police officer. The board informed the parties that they were entitled to a lump sum refund of William's contributions to the pension fund but to make a distribution of the funds the board required a modified QUILDRO order setting out exact dollar amounts each party was to receive. William filed a petition to modify the QUILDRO order to direct 50% of the lump sum to be paid to each party. Dawn filed a petition seeking an order requiring William to pay her the monthly amounts that she would have received had the pension not been revoked. The trial court held it did not have jurisdiction over Dawn's petition because it sought to modify the dissolution judgment. The trial court granted William's motion to modify the Order to reflect the change in his pension. Dawn appealed.

¶ 4    For the following reasons, we affirm the trial court's judgment.

¶ 5                               BACKGROUND

¶ 6    The facts are largely undisputed. In 2013, the trial court entered a judgment of dissolution of the parties' marriage incorporating by reference and making part of the judgment the parties' October 2013 marital settlement agreement (MSA). All of the provisions of the MSA were "adopted as the Orders of this Court" and the judgment required "each of the parties [to] perform any and all of his or her duties and obligations under the terms of this [MSA.]" In the judgment, the trial court retained jurisdiction "for the sole and exclusive purpose of enforcing all the terms of this Judgment *** including all the terms of the [MSA.]"

¶ 7    The MSA allocated the marital property between the parties "to reach a 50/50 allocation of assets and liabilities." The MSA contains a separate section titled Pension Plans and Deferred

2

Compensation Plans. This section of the MSA states the parties "agree to equally divide the marital portion of WILLIAM's interest in the policemen's Annuity and Benefit Fund of Chicago [(pension plan)] he received incident to his employment with the Chicago Police Department." During the marriage and briefly after the marriage ended, William worked as a police officer for the Chicago Police Department and participated in a pension plan. The MSA required Dawn to draft a Qualified Illinois Domestic Relations Order [(QUILDRO)] to effectuate the parties' intent. The trial court retained jurisdiction "to modify this paragraph [of the MSA] in order to qualify the parties' Agreement as a [QUILDRO.]"

¶ 8    On October 25, 2013, the trial court entered the QUILDRO regarding William's pension. The QUILDRO states it "is entered to implement a division of the party's [*sic*] interest in the retirement system." The QUILDRO directed the pension plan to pay the alternate payee (Dawn) 50% of the member's (William's) retirement benefit.

¶ 9    In 2015, William was arrested and charged with perjury, official misconduct, and obstruction of justice connected to his employment as a police officer. William was convicted in 2016 but remained employed until his resignation and retirement in May 2019. William applied for his retirement benefits and initially, the pension plan awarded William a monthly income retirement benefit. In August 2019, the trial court entered the Order identifying Dawn as the alternate payee of William's retirement benefit and setting forth the precise dollar amount of William's monthly income benefit Dawn was to receive as her marital share. The order states that the pension plan shall pay Dawn the amounts listed "but only if and when the benefits are payable pursuant to the QUILDRO and Section 1-119 of the Illinois Pension Code." The Order provided a dollar-amount calculation for a monthly retirement benefit payable to Dawn of $1,721.07 per month.

¶ 10	The Order provided that the trial court retained jurisdiction to establish or maintain the Order as a QUILDRO Calculation Court Order (Order), to enter amended QUILDROs and QUILDRO Calculation Court Orders "to conform to the parties' QUILDRO, [MSA], to the parties' Judgment for Dissolution of Marriage ***, to any modifications of the parties' QUILDRO, [MSA,] or Judgment, or to any supplemental orders entered to clarify the parties' QUILDRO, [MSA,] or Judgment," or to enter a supplemental order "to clarify the intent of the parties *** regarding the benefits allocated" in accordance with (1) the parties' agreement or judgment; (2) any modifications of the parties' agreement or judgment; or (3) "any supplemental orders entered to clarify the parties' Agreement or Judgment."

¶ 11	In November 2022, the pension plan revoked William's monthly income benefit due to his conviction of a felony connected to his work as a Chicago police officer and the board informed the parties they only were entitled to a lump-sum refund of William's pension contributions. The pension plan required an amended Order to disperse the lump sum refund.

¶ 12	In December 2022, Dawn filed her initial Petition to Enforce Judgment for Dissolution and Other Relief. In February 2023, William filed a motion to dismiss the petition. William meanwhile filed a Motion for Entry of Modified QUILDRO Calculation Court Order (Order) to allow a lump sum distribution of his pension contributions.

¶ 13	In April 2023, Dawn filed her Second Amended Petition to Enforce Judgment for Dissolution and Other Relief (Petition), which is at issue in this case. The petition states the parties agreed to equally divide William's martial interest in his pension. The petition states that William "had broad discretion *** in performing under the Pension provisions" and that Dawn "had a reasonable expectation of receiving her portion of the bargained for Pension benefits from [William's] pension." The petition states the pension plan denied William his benefits based on

his felony convictions and thus Dawn received nothing pursuant to her bargained for "property rights" due to William's intentional conduct. The petition alleges that in committing a felony and losing his pension, William "breached his duties to [Dawn] under the MSA."

¶ 14    Count I of the petition alleges that the parties agreed that Dawn would receive 50% of William's marital portion of his pension "as it existed on the date of Judgment October 13, 2013." The Petition charged William with being the steward of Dawn's portion of William's pension as a marital asset and that Dawn is entitled to her benefit of the bargain and her portion of the pension. The petition states the judgment should be "enforced" requiring William to provide Dawn with her marital portion of the pension (pre-revocation of the monthly income benefit) or a monetary equivalent. Count II of the petition seeks, in the alternative, restitution for William's "destruction and waste of Dawn's portion of his pension" due to his "purposeful actions resulting in his convictions."

¶ 15    In May 2023, the trial court conducted a hearing on William's motion to dismiss and on Dawn's petition. Following the hearing, the court found that the relief sought in Dawn's petition was a modification of the terms of the parties' MSA and that the court lacked jurisdiction to modify it. The trial court entered a written order finding that:

"[t]he Court does not have jurisdiction to modify the terms of the parties' [MSA] as the terms of the parties' [MSA] are non-modifiable. The Court must enforce the terms of the parties' [MSA] as written;

[t]he [Judgment incorporating the MSA] do not contain provisions for what will occur in the event the Petitioner does not receive his pension, and the relief the Respondent is seeking constitutes a modification to the terms of the [MSA];

[t]he Respondent is not entitled to such relief under the terms of the MSA and the Court has no jurisdiction to grant such relief."

¶ 16     The trial court denied the petition and, over Dawn's objection, granted William's motion to enter an amended QUILDRO Calculation Court Order (Order) for distribution of his pension contributions. The amended Order calculates a dollar amount payable to Dawn as her 50% share of the termination refund or lump-sum retirement benefit ($64,294.93).

¶ 17                                    ANALYSIS

¶ 18     The issue in this case is whether the trial court had jurisdiction to grant Dawn the relief she sought in her petition which would require William to pay her the sums she would have received if his pension had not been revoked. More than 30 days have elapsed since entry of the final judgment in the dissolution proceeding, which means the judgment was final; therefore, the trial court no longer had jurisdiction over the case. "[E]ntry of a final order in a dissolution proceeding becomes a final and conclusive adjudication after the passage of 30 days from its rendition." (Internal quotation marks omitted.) *In re Marriage of Figliulo*, 2015 IL App (1st) 140290, ¶ 11. "After the expiration of 30 days, the provisions of [the] judgment relating to property rights [become] fixed and final." *Rifkin v. Rifkin*, 114 Ill. App. 3d 555, 559 (1983). "After a 30–day period, property provisions in a MSA are not modifiable." *In re Marriage of O'Malley ex rel. Godfrey*, 2016 IL App (1st) 151118, ¶ 42. See also *In re Marriage of Brubaker*, 2022 IL App (2d) 200160, ¶ 19 ("Judgments for dissolution of marriage are entitled to the same degree of finality as are judgments in other proceedings, even in those judgments that incorporate an MSA."). However, courts retain jurisdiction to enforce their judgments even after the judgment becomes final. "[A] trial court retains indefinite jurisdiction to enforce the terms of a judgment. [Citation.]" *In re Marriage of Hall*, 404 Ill. App. 3d 160, 164 (2010).

¶ 19    In this instance whether the trial court had jurisdiction to grant Dawn relief is determined by whether Dawn's petition sought to enforce the dissolution judgment or to modify the judgment.

¶ 20    There is a distinction between enforcing a judgment and modifying a judgment. A party is seeking to enforce a judgment when that party "requests a determination of the parties' rights and obligations with respect to the terms" of the judgment (*In re Marriage of Figliulo*, 2015 IL App (1st) 140290, ¶ 12) or "is attempting to enforce the parties' rights and obligations" that are "clearly laid out in the marital settlement agreement and judgment of dissolution" ((Internal quotation marks omitted.) *In re Marriage of O'Malley ex rel. Godfrey*, 2016 IL App (1st) 151118, ¶ 44 (quoting *In re Marriage of Hall*, 404 Ill. App. 3d at 165)).

¶ 21    Contrarily, a party is seeking to modify the judgment when that party is seeking to impose "new or different obligations" on the parties. *In re Marriage of O'Malley ex rel. Godfrey*, 2016 IL App (1st) 151118, ¶ 44 (quoting *Hall*, 404 Ill. App. 3d at 165).

¶ 22    The trial court retains jurisdiction to enforce the judgment and MSA. *Hall*, 404 Ill. App. 3d at 164. The issue in this case is whether Dawn's petition seeks enforcement of the MSA, which the court has authority to do, or seeks a modification, which it lacks jurisdiction to do after 30 days, which is a question we review *de novo*. See *In re Marriage of O'Malley ex rel. Godfrey*, 2016 IL App (1st) 151118, ¶ 42 ("The trial court's jurisdiction over a modification to the parties' MSA is a question of law and thus subject to *de novo* review.").

¶ 23    "In order to determine whether [a] petitioner *** sought to enforce the dissolution judgment, we look to its terms." *In re Marriage of Figliulo*, 2015 IL App (1st) 140290, ¶ 12. Dawn's petition seeks to "enforce" the "judgment" by requiring William to provide Dawn with her marital portion of a monthly income pension benefit, or a monetary equivalent.

¶ 24    On appeal, Dawn acknowledges the trial court does not have jurisdiction to modify the dissolution judgment or the documents incorporated therein (hereinafter, collectively the "judgment") and that it only has jurisdiction to enforce the judgment. However, she argues the trial court erred in finding her petition sought modification of the judgment rather than enforcement. Dawn argues the trial court erred in its determination because the judgment is clear on its face and her petition sought enforcement of the judgment "by an alternative means." Dawn relies on "paragraph 6.11 of Section VI of the parties' Marital Settlement Agreement" as the source of William's purported obligation under the judgment to provide Dawn with the amount calculated on the August 2019 QUILDRO Calculation Order (Order) ($1,721.07 per month). Dawn argues that "once the [Order] was entered in 2019, the monetary amount [Dawn] is entitled to was fixed" because it became part of the judgment 30 days after it was entered and thereafter represented "[t]he amount [Dawn] is entitled to" as a "known monetary figure as set by the trial court."

¶ 25    We find that Dawn's interpretation of the MSA as entitling her to the amount calculated in the August 2019 Order is contrary to the parties' expressed intent in the unambiguous language of the judgment and MSA. First, the parties agreed to equally divide William's interest in the pension he received incident to his employment. Paragraph 6.11 required Dawn to draft a QUILDRO "to effectuate the intent." The unambiguous language of the MSA, given its plain and ordinary meaning, does not express an intent to provide Dawn with a monthly income, but that is what she seeks in her petition. Dawn's petition seeks to engraft a new responsibility on William to provide Dawn a monthly income benefit (or equivalent cash amount) calculated based on the monthly income benefit he *could* have received irrespective of the "interest in the [pension] he [actually] received incident to his employment."

8

¶ 26    The QUILDRO directed the pension plan to pay Dawn "the indicated amounts of the member's *retirement benefits*." There is nothing in the language of the dissolution judgment, MSA, QUILDRO, or Order to indicate an intent that Dawn is entitled to a "monthly income benefit" that is not paid by the pension plan but is instead paid and funded by William. Not only is this contrary to the parties' expressed intent in the provisions specifically addressing William's pension, it is also contrary to the parties' intent "to reach a 50/50 allocation of assets and liabilities." If William was required to fund this payment to Dawn from a source other than the pension plan, his allocation of marital assets would decrease and Dawn would experience a corresponding increase in her allocation of marital assets.

¶ 27    The plain language of the judgment does not express any intent to award Dawn an amount William *could* have received or any fixed amount. The 2019 QUILDRO Calculation Court Order, by its own plain and unambiguous language, did not fix a right in Dawn to a fixed payment. The judgment does not provide a fixed payment irrespective of the pension payments. The Order merely reflects the percentage of the actual pension benefit she is entitled to receive under the judgment. If the parties intended Dawn to receive a fixed payment, they could have added specific language to reflect that intention. *In re Marriage of Hall*, 404 Ill. App. 3d 160, 167 (2010) (holding the petitioner's interest was not limited to specified retirement plans because had the parties intended to limit petitioner's interest to specific retirement plans, they could have added language to effectuate that intent).

¶ 28    Dawn's petition is not seeking enforcement of the MSA which was incorporated into the judgment. Rather, Dawn's petition seeks to impose a new or different obligation on William to himself pay her this benefit. Therefore, we find Dawn's petition seeks to modify the judgment, which the court could not do. Based on our finding that Dawn's petition actually sought to

9

modify the judgment rather than enforce it, the trial court's finding it lacked jurisdiction is affirmed. We have no need to address whether Dawn would be entitled to relief if the court had jurisdiction.

¶ 29    Finally, despite Dawn's argument to the contrary, we find the trial court properly amended the QUILDRO Calculation Court Order (Order) to reflect the change in William's retirement benefit. Dawn argues the amended Order "improperly modified the judgment" by removing Dawn's monthly benefit from the marital portion of William's pension. Dawn takes the position that she became entitled to the monthly payment once William retired and the August 2019 Order was entered. Dawn argues the trial court engrafted a new obligation on Dawn to accept much less than the parties intended. We disagree.

¶ 30    First, the August 2019 Order provided that the trial court retained jurisdiction to enter amended QUILDRO Calculation Court Orders "to conform to the parties' [judgment], to any modifications of the parties' [judgment,] or to any supplemental orders entered to clarify the parties' [judgment;]" and to enter supplemental orders to clarify the parties' intent regarding the benefits allocated therein in accordance with the parties' judgment. As stated above, the parties clearly expressed intent in the judgment was to equally divide the marital share of the pension benefit Willliam actually received, not some theoretical benefit he may have received. We find the trial court, pursuant to its retained jurisdiction, properly amended the Order to reflect the parties' intent expressed in the unambiguous language of the judgment to award Dawn a percentage of the pension benefit William would actually receive.

¶ 31    In *Hall*, the court upheld the trial court's modification of a QDRO to reflect the petitioner's interest in all of the respondent's retirement plans and not certain specified plans. *In re Marriage of Hall*, 404 Ill. App. 3d at 166. The court held that the "petitioner is not seeking to

impose new or different obligations on the parties. Rather, she is attempting to enforce the parties' rights and obligations with respect to respondent's retirement plans, which were clearly laid out in the marital settlement agreement and judgment of dissolution." *Id.* (citing *In re Marriage of Allen,* 343 Ill. App. 3d 410, 413 (2003)). In *Allen*, the court upheld the trial court's order modifying a QDRO to reflect the proper formula for calculating the petitioner's share of the respondent's pension. *Allen*, 343 Ill. App. 3d at 413. The *Allen* court held:

> "[T]he court has jurisdiction to amend a QDRO to conform it to the judgment. *** The judgment in this case specified a formula for use in determining the petitioner's share of the respondent's pension. *** The amendment to the QDRO changed the formula to conform to the judgment. This change did not impose new or different obligations on the parties. The rights and obligations of the parties vested when the judgment became final. [Citation.] The amendment to the QDRO was necessary to enforce the petitioner's rights and obligations with respect to the pension. Since the amended order only enforced the provisions of the judgment, the court had jurisdiction to make the modifications." *Allen*, 343 Ill. App. 3d at 412-13.

¶ 32    Similarly, in this case, the amendment to the Order was necessary to enforce William's obligations with respect to the pension. That obligation was for the pension plan to pay Dawn 50% of the marital share of William's pension benefit he receives incident to his employment. As a result of the revocation of William's monthly income benefit, the pension benefit he will receive changed and therefore, pursuant to the judgment, Dawn was no longer entitled to a monthly income benefit. The amendment to the Order conformed the Order to the judgment to require the payment of 50% of the marital share of William's Termination Refund or Lump-Sum

Retirement Benefit to Dawn. Thus, in this case, "[s]ince the amended order only enforced the provisions of the judgment, the court had jurisdiction to make the modifications." *Allen*, 343 Ill. App. 3d at 412-13.

¶ 33                                   CONCLUSION

¶ 34    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 35    Affirmed.