NOTICE

Decision filed 02/19/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190373-U

NO. 5-19-0373

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| TONI ANDREWS, | ) | Jefferson County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 18-D-59 |
| | ) | |
| JOSHUA ANDREWS, | ) | Honorable |
| | ) | Timothy R. Neubauer, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE WHARTON delivered the judgment of the court.
Presiding Justice Welch and Justice Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the terms of the property division stipulation omitted real estate jointly held by Toni and Joshua Andrews, we find that the trial court abused its discretion in denying Toni's request to modify or vacate the judgment; vacate the property and debt distribution and asset equalization sections of the amended judgment; and remand for further proceedings. Where the trial court did not abuse its discretion in calculating the amount of child support, we affirm that portion of the trial court's amended judgment.

¶ 2    After the trial court entered a judgment that dissolved the marriage and resolved all other issues, Toni Andrews (Toni) filed a posttrial motion asking the court to correct possible errors and omissions in its determination of maintenance and property

1

distribution and to modify the manner in which the court calculated child support. The trial court agreed with some of the points Toni raised and entered its amended judgment. Toni appeals from the trial court's denial of her request that the court reconsider its property distribution to include 22 acres of real estate she owned jointly with Joshua Andrews (Joshua). Toni also appeals from the trial court's amended child support order. For the reasons that follow, we vacate the property distribution and asset equalization; affirm the child support award; and remand for further proceedings.

¶ 3                               BACKGROUND

¶ 4     Toni and Joshua married in 2006. Three children were born during this marriage. R.A. was born in 2007; T.A. was born in 2010; and I.A. was born in 2012. Toni moved out of the marital residence in February 2018 and filed a petition for dissolution of her marriage to Joshua in May 2018. Joshua filed a counterpetition on August 29, 2018, and filed a petition seeking temporary and permanent primary parenting responsibility and primary parenting time allocation.

¶ 5     On October 10, 2018, the trial court entered an agreed temporary order. The parties had agreed that Joshua would have exclusive possession of the marital residence—a double wide mobile home. Toni was required to temporarily pay the mortgage and utilities on the residence in lieu of traditional child support or maintenance. Parenting time was shared with Toni having the children from Saturdays at 5 p.m. until Sundays at 9 a.m., then from 11 a.m. on Sundays until 5 p.m. on Tuesdays. Joshua had all other parenting time.

2

¶ 6    Both parties filed a financial affidavit with the court.  In Joshua's affidavit, he listed the value of his real estate asset at $130,000 subject to a mortgage with an unknown balance.  Toni's affidavit contained no valuation for the real estate asset and listed the mortgage balance at approximately $40,000.

¶ 7    On March 27, 2019, the trial court entered an order requiring Toni to produce the following documents: value and payoff quote on her vehicle; a current 401(k) statement; the payoff quote on the mortgage; her valuation of the double wide; a proposed parenting time schedule; and a complete financial affidavit.

¶ 8    Trial took place on May 1, 2019.  Unfortunately, the entire trial was not recorded, and therefore, the record on appeal is incomplete.  A court reporter was present for the first half of the trial. A court reporter was not available for the second half of the trial and the parties agreed to proceed without having the trial record preserved.  The appellant has the responsibility for preparing a full and complete appellate record. *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 319, 789 N.E.2d 1248, 1251 (2003).  "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392, 459 N.E.2d 958, 959 (1984).

¶ 9    Before trial, the parties stipulated that all property was to be divided in half.  The parties also stipulated to the valuations.  Toni was to receive the 2017 GMC Acadia valued at $18,510 (subject to a $26,130 loan), and her Walgreens 401(k) account then valued at $50,019.  Joshua was to receive a double wide valued at $21,749 (subject to a $45,366 loan), and his own lawn care business valued at $46,595.   He was also responsible for a $12,000 loan balance on a piece of lawn care equipment.  Based on the

3

asset values and remaining debt, Joshua's attorney prepared an asset equalization document suggesting that Toni owed Joshua $15,710.50.

¶ 10 The parties also stipulated to shared responsibility and duty for the children's medical, education, and religious decisions.

¶ 11 Toni and Joshua did not stipulate to parenting time allocation, maintenance, and child support. Testimony at the trial was connected to these three issues.

¶ 12 Toni testified that she was a maintenance administrative specialist for a Walgreens Distribution Center working Wednesdays through Saturdays from 5 a.m. to 3 p.m. earning approximately $46,000 annually. She began a new position at Walgreens in November 2017 that was part of a group responsible for rebranding a Rite Aid distribution center in Connecticut. Toni had informed Walgreens that she would only travel to Connecticut one weekend per month. Toni explained that she had the ability to move the one weekend to different weekends in order to accommodate parenting time with her children but testified that Walgreens did not provide much advance notice about the scheduled weekend. She currently has parenting time with the children every weekend, which means that she has been unable to exercise her parenting time on the one Connecticut weekend each month.

¶ 13 Toni testified that the income for Joshua's business was inaccurate on their joint income tax returns because he did not report all income he earned. Her knowledge stems from the fact that she had been the bookkeeper for the business. Specifically, Toni testified that in 2017 Joshua earned $60,243, but only reported $35,680 as income on their joint income tax return. On cross-examination, she admitted that she had lied to the

4

Internal Revenue Service by filing the false return but stressed that the false income amounts were filled out at Joshua's specific direction.

¶ 14 Toni asked the court to award no maintenance because she and Joshua both earned approximately the same amount.

¶ 15 Toni testified about the current parenting time schedule and testified that she would prefer having the three children for one week at a time, but also stated that she would be fine with any division of parenting time that was split evenly. She asked the trial court to award no child support if the parenting time was split evenly as she requested. Toni acknowledged that there have been times that she had not been able to control their son, and when that occurred, she contacted Joshua to pick him up. Toni stated that her mother had agreed to help her with the children on school days if the court determined that parenting time should be evenly split.

¶ 16 At the time of the trial, Toni was living in her mother's home, and although the three children did not have their own rooms, two had their own beds, and the third, the youngest, still wanted to sleep with Toni. Toni expressed her hope that she could eventually move out and have her own home.

¶ 17 Joshua testified that the parties separated on Valentine's Day of 2018 when Toni vacated the marital home. She told the family that she needed to catch up on her sleep and that she was going to her mother's home, but that she would eventually move back home. She told the children she would stop by each day to visit with them. However, Toni did not return to the marital home, and she did not keep her promise of daily visits with the children. He confirmed that Toni frequently had difficulty with their son who

5

wanted little to do with his mother because of the abandonment. Joshua stated that at least once per month he would be called by Toni to pick up the children before her scheduled parenting time was over. Joshua asked the trial court to maintain the current parenting time schedule because the children were adjusted to the schedule.

¶ 18 Joshua stated that he had owned his own lawn care business for 10 years. He works four days a week from spring to fall; plows snow when necessary in the winter; and otherwise is home and available to the children. He had about five steady clients but was always looking for additional work. Joshua denied that he underreported his income on the income tax returns.

¶ 19 Joshua testified that he would not be able to continue to live in the marital residence without an award of maintenance. He denied having any equity in the double wide, in that the home was valued at approximately $20,000 less than what was owed on the mortgage.

¶ 20 Toni's mother, Cynthia A. Bevis, prepared a document, labeled "Comparable Market Analysis," that contained her expert opinion as to the value of the double wide. Both parties stipulated to the admissibility of this exhibit. The document is dated Thursday, March 28, 2019, and states that it was "Prepared for 2000 Four Seasons FS211002 Manufactured Home." All references to the property in this document are limited to the double wide, and do not reference the underlying real estate where the double wide was located. The Jefferson County property tax records for 2017 valued the double wide at $23,073. There had only been two area comparable double wide sales in the past two years. Based upon those two sales, Bevis determined that the going rate for

6

this type of property was $14.16 per square foot. Mathematically, Bevis concluded that "the subject property, double wide only" was valued at $21,749.75.

¶ 21 The court entered its judgment of dissolution of marriage on June 7, 2019. The trial court imputed annual income of $36,000 to Joshua, and then ordered Toni to pay monthly child support of $702.96 until May 31, 2030, monthly maintenance of $477.18 until September 2025, and to obtain and pay for the children's health insurance. The trial court noted that the parties stipulated to the values of property and debts and incorporated the exhibit prepared by Joshua's attorney into its order. The court found that in order to divide the assets evenly, Toni owed Joshua an equalization payment of $15,710.50.

¶ 22 After the entry of the judgment, Toni hired a new attorney who advised her to transfer the utility accounts into Joshua's name. According to Toni's affidavit in the court record, she received a copy of the deed for the 22 acres from the water utility company, and then discovered that she jointly owned the 22 acres with Joshua.

¶ 23 Toni's new attorney asked the court to modify or vacate the maintenance, child support, parenting time, and property distribution awards. The trial court amended the judgment on August 1, 2019, as follows: modified the parenting time allocation to take into account the periodic weekends Toni was required to work; lowered the monthly child support amount to $600 per month; struck the maintenance award; added a Ford truck valued at $8000 that had been omitted from the stipulated property list; and modified the equalization amount that Toni owed Joshua to $11,710.

¶ 24 Toni timely appealed from this order.

7

¶ 25                                                    ANALYSIS

¶ 26    On appeal, Toni raises two issues.  First, she claims that the trial court's property distribution was inequitable and was not based upon the evidence in the record because the distribution omitted the jointly held real estate.  Second, Toni claims that the trial court's child support calculation was erroneous.

¶ 27                                          Property Distribution

¶ 28    Toni claims that the trial court should have included the 22 acres of real estate in its property distribution.  Joshua argues that the trial court's distribution was correct because the parties had entered a valid stipulation and because Toni had indicated that she would not pursue a share of the real estate that his stepfather had given him.

¶ 29    Settlements in cases are guided by the principles of contract law.  *Rose v. Mavrakis*, 343 Ill. App. 3d 1086, 1090, 799 N.E.2d 469, 473 (2003).  Marital settlement agreements, like the property division stipulation in this case, are considered contracts. *In re Marriage of Haller*, 2012 IL App 110478, ¶ 26, 980 N.E.2d 261 (citing *In re Marriage of Bohnsack*, 2012 IL App (2d) 110250, ¶ 9, 968 N.E.2d 692).  "The best indicator of the parties' intent is the language used in [the] marital settlement agreement." *In re Marriage of Frank*, 2015 IL App (3d) 140292, ¶ 11, 40 N.E.3d 740.  If the terms of the agreement are unambiguous, the parties' intent must be determined from the language utilized.  *Id.* ¶ 12.  The language is considered ambiguous if the wording "is susceptible to more than one reasonable interpretation."  *Id.*  On appeal, we review a trial court's interpretation of a marital settlement agreement *de novo*.  *Id.*

¶ 30    When a party asks the court to modify or vacate a property settlement, the presumption is that the settlement is valid. *In re Marriage of Hamm-Smith*, 261 Ill. App. 3d 209, 214, 633 N.E.2d 225, 229 (1994) (citing *In re Marriage of Riedy*, 130 Ill. App. 3d 311, 313, 474 N.E.2d 28, 30 (1985)).

¶ 31    The record contains no documentary or testimonial evidence supporting Joshua's claim that Toni planned to gift Joshua with her share of the 22 acres.

¶ 32    The record contains the document Cynthia A. Bevis prepared that was entered as an exhibit at trial. From the express wording used in the exhibit, Bevis did not place a value on the 22 acres of real estate.  During the hearing, the trial court stated that it assumed that Bevis's valuation included the real estate because she was a real estate expert.  Then, in ruling against Toni's modification request, the court indicated that Toni stipulated to the value of the "real estate" and therefore she is "stuck with it."

¶ 33    We find that it is difficult to square the trial court's statement that Toni stipulated to the value of the real estate with the evidentiary documents before the trial court.  The stipulation document prepared by Joshua's attorney did not include the real estate. Joshua's attorney attempts to argue that the 22 acres of real estate was included in the stipulation and that the value was $21,749.75.   We find that this argument mischaracterizes the evidence.  The stipulated amount matches the value Bevis placed only on the double wide.  Looking at the stipulation, Joshua's attorney did not specify a value for the underlying 22 acres.  The stipulation does not state that the $21,749.75 value is for real estate.  The marital asset listed next to the $21,749.75 value is "double wide."  While the documentation clearly reflects that the parties stipulated to the value of

9

the double wide, it strains logic to accept the trial court's implicit finding that the term "double wide" included the 22 acres.

¶ 34 We also conclude that there was no evidence provided in Bevis's valuation report supporting the trial court's statement that her valuation must have included the real estate because her expertise was in real estate. By its express wording, the stipulated exhibit provided valuation only for the double wide. In addition, the claim that real estate was included in Bevis's valuation was directly contradicted by both the language of the asset stipulation ("double wide" with no mention of real estate) and the higher valuation for the real estate contained in Joshua's financial statement.

¶ 35 The language of the stipulation, coupled with the Bevis valuation of the double wide, is clear and unambiguous. If the terms of the stipulation are unambiguous, as we find that they are in this case, intent must be determined from the language of the agreement. *Marriage of Frank*, 2015 IL App (3d) 140292, ¶ 12. We find that the stipulation only awarded Joshua the double wide—not the double wide and the 22 acres.

¶ 36 In addition, the record contains Toni's affidavit in which she states that when the stipulation was prepared, she believed that the land was only in Joshua's name. Toni's claim is supported by her financial statement. Toni's financial statement did not include the real estate as one of her assets. In contrast, Joshua's financial statement listed the real estate. Both financial statements were stipulated exhibits at trial, and thus the conflicting evidence was before the court for consideration.

¶ 37 Furthermore, Joshua's attorney made statements at the motion hearing reflective of an intent not to list the value of the 22 acres. Joshua's attorney stated that she did not

10

believe that Toni was going to make a claim against the real estate. This belief was apparently based upon statements made either by Toni or by Toni's original attorney. And, when Toni was ordered by the court to obtain a valuation of the double wide, and Toni produced the valuation prepared by Bevis at $21,749.75, Joshua's attorney stated that she and her client "were very pleasantly surprised *** and we accepted it." Utilizing that value for the double wide, they included only the value of the double wide on the list of assets to be awarded to Joshua with no reference to the 22 acres. Joshua's attorney stated that she would not have been properly representing her client if she had added a value for the 22 acres because that would have changed the equalization payment and would have been detrimental to Joshua.

¶ 38 Moreover, we find that the trial court's statement that Toni was "stuck" with her stipulated asset distribution to be inconsistent with the trial court's subsequent amended judgment. In the amended judgment, Toni's attorney informed the trial court of another omitted asset that Joshua was receiving—a Ford truck valued at $8000. This asset should have been included in and increased the value of his lawn care business. Despite the stipulation to the value of the lawn care business, the trial court stated: "[W]hat I have got as a record—and I am going [to] follow my record. So I am going to—the $8,000.00 is the value for the truck. That's it. We know there is a recapitulation so it's not $8,000.00, it's $4,000.00."

¶ 39 Whether a judgment should be vacated is within the trial court's sound discretion. *Espedido v. St. Joseph Hospital*, 172 Ill. App. 3d 460, 466, 526 N.E.2d 664, 667 (1988). Vacating a judgment will not be considered an abuse of discretion when doing so

promotes substantial justice between the parties. *Id.* We find that the trial court should have vacated or modified the property division stipulation in order to include the 22 acres of real estate owned by Toni and Joshua. The trial court modified the parties' stipulation after the trial to include another omitted asset—the Ford truck; the stipulation unambiguously awarded only the double wide to Joshua; the stipulated financial statement exhibits provided by the parties reflect the omission and discrepancy in value; and the expert valuation expressly only valued the double wide. Even if we assume that this was Toni's unilateral mistake, the stipulation could be set aside pursuant to contract law. See *Cameron v. Bogusz*, 305 Ill. App. 3d 267, 273, 711 N.E.2d 1194, 1198 (1999). Accordingly, we vacate the property distribution and asset equalization sections of the amended judgment. We remand this case to the trial court for further proceedings consistent with this order.

¶ 40                                      Child Support

¶ 41    Toni also claims that the trial court erred in setting child support at $600 per month because the trial court should have applied the provisions of section 505(a)(3.8) of the Illinois Marriage and Dissolution of Marriage Act. 750 ILCS 5/505(a)(3.8) (West 2018). On appeal from a child support determination, the reviewing court will not overturn the trial court's decision unless the trial court abused its discretion. *In re Marriage of Deem*, 328 Ill. App. 3d 453, 457, 766 N.E.2d 661, 665 (2002) (citing *In re Marriage of Tietz*, 238 Ill. App. 3d 965, 978, 605 N.E.2d 670, 680 (1992)).

¶ 42    Section 505(a)(3.8) provides guidance in cases where physical care is shared between the parents. The section provides:

> "If each parent exercises 146 or more overnights per year with the child, the basic child support obligation is multiplied by 1.5 to calculate the shared care child support obligation. The court shall determine each parent's share of the shared care child support obligation based on the parent's percentage share of combined net income. The child support obligation is then computed for each parent by multiplying that parent's portion of the shared care support obligation by the percentage of time the child spends with the other parent. The respective child support obligations are then offset, with the parent owing more child support paying the difference between the child support amounts."

750 ILCS 5/505(a)(3.8) (West 2018).

¶ 43 In this case the trial court's concern was that Toni was not currently exercising 146 or more overnights per year because of her work schedule, and thus application of section 505(a)(3.8) was inappropriate. The court stated:

> "She had a job obligation. She had to work out of town. How long that continues we don't know. So the reality is that she hasn't been able to exercise all of her time. *** I can't change your facts in life as you go through it. Different jobs. Different positions. Different pay scales. It's going to change.
>
> *** [W]e have the ability to modify things based upon the facts, and people don't get locked in generally speaking to a lifetime obligation."

¶ 44 Toni argues that the trial court should have applied the child support calculation in section 505(a)(3.8) in this case because she was awarded 156 overnights per year in the amended allocation judgment. However, that number does not account for Toni's one weekend per month that she works. When Toni is out of town, those days revert to Joshua, and so she falls below the 146 overnights threshold for application of the section 505(a)(3.8) formula.

¶ 45    Having reviewed the record, we conclude that the trial court did not abuse its discretion in its child support determination. *Marriage of Deem*, 328 Ill. App. 3d at 457. As the trial court aptly stated, the future may mandate a change to the child support amount.

¶ 46                                                CONCLUSION

¶ 47    For the reasons stated in this order, we vacate the property distribution and asset equalization order; affirm the child support order; and remand for further proceedings.

¶ 48    Vacated in part; affirmed in part; and remanded.