# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black; padding:1em;">

### *In re Marriage of Warner*, 2020 IL App (3d) 190198

</div>

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF RICKY WARNER, Petitioner-Appellee, and NANCY WARNER, Respondent-Appellant. |
| District & No. | Third District<br>No. 3-19-0198 |
| Filed<br>Rehearing denied | April 22, 2020<br>June 9, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Knox County, Nos. 12-D-22, 12-OP-35; the Hon. Scott Shipplett, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jana Yocom Rine, of Yocom Rine Law Offices, of McKinney, Texas, for appellant.<br><br>David H. McCarthy, of McCarthy Law Firm, of Peoria, for appellee. |
| Panel | JUSTICE WRIGHT delivered the judgment of the court, with opinion.<br>Justices Carter and O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1 The circuit court entered a judgment of dissolution of marriage, awarding the family farm to respondent. The judgment required respondent, after obtaining a loan or selling the farm, to make a payment to petitioner to settle the marital estate. The circuit court entered postjudgment orders facilitating the sale of the farm. Respondent filed a motion to enforce the judgment and vacate the postjudgment orders, which was denied. Respondent appeals.

¶ 2 I. BACKGROUND

¶ 3 Petitioner, Ricky Warner, and respondent, Nancy Warner, were married on May 17, 1997. Two children were born of the marriage. On February 6, 2012, Ricky filed a petition for dissolution of marriage in Knox County case No. 12-D-22.[1] As discussed below, the marriage was not dissolved by judgment of the circuit court until December 30, 2015. The court ordered distribution of Ricky's share of equity in the parties' 80-acre family farm has not occurred.

¶ 4 On May 18, 2015, after three years of proceedings, the circuit court sent the parties an opinion letter resolving all disputed issues, including the distribution of equity from the parties' 80-acre farm.[2] The circuit court found "[t]he house and farm are worth $569,200 pursuant to an appraisal done" for Nancy by Skinner Appraisal. The circuit court recognized Nancy "hotly contested this appraisal and was given almost a year to get a different appraisal and refused." Indeed, the circuit court said the appraisal "isn't perfect as the appraiser gives an aggravate [*sic*] value for the entire 80 acres of house, tillable, and non-tillable so it is unclear what the value of the home is or the value of the tillable acres, which would have been important" for a partition.

¶ 5 Ultimately, the circuit court found, after deducting a $78,611 mortgage, broker's commission, and costs of sale for the farm, that $460,000 was available for distribution to the parties. The circuit court found Ricky and Nancy should receive distributions of $200,000 and $260,000, respectively, because Ricky received a disproportionate share of other marital assets.

¶ 6 The circuit court awarded the entire farm to Nancy but ordered her to "pay Ricky $200,000 in settlement of the marital estate by December 31, 2015," or within 30 days of Nancy's sale or refinancing of the farm. Nancy had the options of partially selling the farm or securing a loan to pay Ricky his $200,000 equitable distribution. Ricky was directed to "convey to Nancy a quit-claim deed *** in order to facilitate" the partial sale of the farm. However, if it was unfeasible for Nancy to obtain $200,000 by a partial sale of the farm or by securing a loan, then Nancy would have to sell the entire farm and, after paying the costs of sale and the $78,611 mortgage, "deduct for herself an additional $31,000" before splitting the remaining balance of sale with Ricky. On December 30, 2015, the circuit court entered a judgment of dissolution of marriage (original judgment) incorporating the May 18, 2015, opinion letter.

¶ 7 Nancy timely filed a motion to reconsider or clarify the original judgment on January 29, 2016. On October 27, 2016, the circuit court clarified the issue of capital gains under the terms of the original judgment, stating:

---

[1]When the petition for dissolution of marriage was filed in the circuit court, Ricky and Nancy were 51 and 49 years old, respectively. Ricky and Nancy's two children were 12 and 8 years old.

[2]At this time, Ricky was a truck driver on a farm and Nancy was a certified public accountant.

Ricky "owes [Nancy] the sum of $31,000.00 to offset his increased share. [Nancy] shall receive a credit in the amount of $31,000.00 from the proceeds of the marital real estate without taking into account the cost of sale. If [Nancy] actually sells any portion of the acreage to obtain funds to pay [Ricky] his share under the order, any capital gains arising out of the sale shall be split 50/50 between the parties upon proper documentation from [Nancy] to [Ricky]."

¶ 8        On November 23, 2016, Nancy filed a motion for retrial, rehearing, modification, or vacatur of the original judgment. The circuit court denied this motion.

¶ 9        As of February 23, 2017, Ricky had not received his $200,000 equitable distribution. Thus, Ricky filed a petition for rule to show cause against Nancy. During the proceedings on Ricky's petition, the circuit court learned Nancy was unable to partially sell the farm or obtain a loan in order to settle the marital estate. However, Nancy informed the circuit court that she was in negotiations for the sale of the entire farm. The circuit court did not find Nancy in contempt but said the issue would be revisited in 90 days.

¶ 10        On April 10, 2017, Nancy entered a contract for the sale of the entire farm to Roger and Julie Newell and Randy Newell (Newells) for $369,000. Nancy also separately contracted with the Newells to subsequently buy back "the house and 13 acres." On June 16, 2017, Nancy filed a motion to compel Ricky's cooperation with the sale of the entire farm to the Newells.

¶ 11        On September 29, 2017, after various motions and hearings, the circuit court found the home and 13 acres had a value of $95,000. Likewise, the value of the farm ground was $294,000. These values were a combined $180,200 less than the $569,200 valuation of the farm in the original judgment. The circuit court granted Nancy's motion to compel Ricky's cooperation with the Newell contract but included the contingency that the Newells pay $389,000 instead of $369,000, as was negotiated by Nancy. The circuit court ordered Ricky to "attend the closing conveying his ownership interest" in the farm.[3]

¶ 12        On December 20, 2017, before the closing date for the sale of the farm to the Newells, Ricky filed a motion to compel Nancy's cooperation with a sale of the farm. Ricky stated he obtained an offer to purchase the entire farm from Ryan and Julie Howard (Howards) for $456,000. This purchase price was $67,000 more than the court ordered minimum amount to be paid by the Newells, but was $113,000 below the valuation of the farm in the original judgment.

¶ 13        Before the hearing on Ricky's motion to compel, Nancy filed a petition for the adjudication of indirect civil contempt against Ricky for refusing to cooperate with the sale of the farm to the Newells. Ricky responded that Nancy did not provide him with the contract for the sale of the farm to the Newells until "almost three months after the [circuit court's September 29, 2017] Order." By that time, the Howards offered $67,000 more than the purchase price to be paid by the Newells. Thus, Ricky believed he "acted in good faith to maximize marital assets."

¶ 14        On January 19, 2018, Ricky amended his motion to compel Nancy's cooperation with the sale of the farm to the Howards, stating he "received an updated, better offer" from the Howards that gave Nancy the option to purchase "all buildings and 5 acres of land" for

_____

[3]The circuit court reserved the right to determine the amount Ricky would receive, as part of the sale of the farm, in proceedings for college expenses or child support. The amount would be based upon the net proceeds of the sale, the payoff of the mortgage, real estate taxes, closing costs, and capital gains.

$90,000. If Nancy exercised this option, then the Howards would purchase the remainder of the farm for $366,000.

¶ 15    On January 31, 2018, the circuit court denied Nancy's petition alleging Ricky's indirect civil contempt. The circuit court also granted Ricky's amended motion to compel Nancy's cooperation with the sale of the farm to the Howards, stating: the offer to "purchase real estate 80 acres with offer to sell five acre residential tract made by [the Howards] *** will maximize the sale *** and will give [Nancy] an option to purchase so that she and her daughter may continue to reside in the house." Nancy declined to sign the contract with the Howards. Thus, the circuit court "affixed it's [*sic*] own signature to the contract in lieu of [Nancy]'s and authorize[d] the sale of" the farm to the Howards. The closing was ordered to occur as soon as possible.

¶ 16    On March 1, 2018, Nancy filed a motion to reconsider the circuit court's order compelling the sale of the farm to the Howards. Next, Ricky filed a petition for rule to show cause and another motion to compel Nancy's cooperation with the sale of the farm to the Howards, alleging Nancy "failed to appear and participate in the closing and has refused to sign any documents necessary to complete the transaction" with the Howards. On March 12, 2018, the circuit court denied Nancy's motion to reconsider the January 31, 2018, order, stating:

>    "It is the Court's opinion that [Nancy], in possession of the largest part of the marital estate, is defending the status quo through procrastination and intransigence. She insists that every issue *** [is] interrelated and no issue can be resolved except in the order she determines. And nothing can ever be finalized without more collateral litigation. This is not a difficult case. The house and farm are marital property subject to division. The Court has ordered the division. [Nancy] has impeded the sale. [Nancy]'s Motion to Reconsider is Denied."

Again, the circuit court declined to hold Nancy in contempt but stated, "[t]o facilitate the closing, the close shall take place in Open Court at a date and time to be set by [Ricky], so that the Court may sign any necessary documents absent [Nancy]'s lack of cooperation."

¶ 17    On March 22, 2018, the circuit court denied Nancy's emergency motion to stay and ordered the closing to occur in open court. Nancy filed notices of appeal, one interlocutory in nature, on March 23, 2018.[4] Our court dismissed Nancy's appeals for lack of a final and appealable order. The mandates issued on December 26, 2018, and April 17, 2019, respectively.

¶ 18    On March 19, 2019, Ricky noticed the closing. On March 27, 2019, Nancy filed what was captioned as a motion to enforce the original judgment and vacate the postjudgment orders under section 510(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510(b) (West 2018)) and section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2018)). On April 11, 2019, the circuit court denied Nancy's motion, stating:

>    "This Court is not modifying the Judgment in any material way. The Judgment compelled [Nancy] to sell the property and make an equalization payment. She could not or would not perform. The reasons why she did not perform were heard by the Court over several months and multiple hearings. It is one month shy of four years

---

[4]The appeals were filed as appeal Nos. 3-18-0177 and 3-18-0179. See *In re Marriage of Warner*, No. 3-18-0177 (Nov. 16, 2018) (unpublished summary order under Illinois Supreme Court Rule 23); *In re Marriage of Warner*, No. 3-18-0179 (Mar. 7, 2019) (unpublished summary order under Illinois Supreme Court Rule 23). Two members of this panel participated in appeal No. 3-18-0179.

since the Court authored the Opinion letter requiring the sale and [Nancy] is asking the Court to simply go back to 2015, have [Ricky] sign a quit-claim deed, and rely again on [Nancy]'s good faith to sell the property. On this point, [Nancy]'s attorney advised that she did not know if the Newells were still interested in making the purchase and suggested that the Howards were acceptable purchasers if they were the highest bidders.

Reliance on good faith efforts did not work before, and that is precisely why we are at the point where the Court has previously authorized a sale to the Howards. The Court has no confidence or reason to think anything has changed.

The Motion *** filed by [Nancy] is denied. The parties are ordered to attend the closing on April 23rd to effectuate the sale of the property. If a party fails to appear the Court reserves the right to sign on his or her behalf."

On April 16, 2019, Nancy filed a timely amended notice of appeal under Illinois Supreme Court Rule 304(b)(3) (eff. Mar. 8, 2016).[5]

## II. ANALYSIS

Nancy's pleading, captioned as a motion to enforce, relies in part on section 510(b) of the Act, which states the circuit court lacks subject matter jurisdiction to modify provisions of a property disposition, "unless [it] finds the existence of conditions that justify the reopening of [the] judgment under the laws of this State." 750 ILCS 5/510(b) (West 2018); *In re Marriage of O'Malley*, 2016 IL App (1st) 151118, ¶ 42; *In re Marriage of Hall*, 404 Ill. App. 3d 160, 164 (2010). For purposes of this appeal, we treat Nancy's motion to enforce as a section 2-1401 petition to vacate the circuit court's postjudgment orders. See 735 ILCS 5/2-1401 (West 2018).

We are not persuaded by Nancy's argument that the circuit court's postjudgment orders, facilitating the sale of the farm, improperly modified the original judgment under section 510(b) of the Act. Our careful review of the record reveals that the circuit court allowed Nancy flexibility with respect to her approach for securing $200,000 to pay Ricky his equitable distribution in settlement of the marital estate. However, by all accounts, it became unfeasible for Nancy to partially sell the farm or secure a loan to pay Ricky his $200,000 equitable distribution. Consequently, the original judgment required Nancy to sell the entire farm.

It is well established that the circuit court has "indefinite jurisdiction" to enforce prior judgments. *In re Marriage of O'Malley*, 2016 IL App (1st) 151118, ¶ 42; *In re Marriage of Hall*, 404 Ill. App. 3d at 164; *In re Marriage of Allen*, 343 Ill. App. 3d 410, 412-13 (2003). A modification occurs under section 510(b) of the Act when new obligations are engrafted onto a party under the order. *In re Marriage of Davis*, 292 Ill. App. 3d 802, 807 (1997); see also *In re Marriage of Hubbard*, 215 Ill. App. 3d 113, 117 (1991).

Here, the circuit court did not engraft any additional obligations onto the parties with its postjudgment orders, despite the fact that Nancy would have preferred to control the sale of the farm to the purchasers, the Newells, that she secured and approved. The higher offer for

---

[5]Nancy also filed a motion to stay, which was denied. After this denial, but before the closing, Ricky requested that the circuit court not proceed any further so the parties could discuss the sale of the farm. This request was granted, but no agreement by the parties was reached. The farm remains unsold.

the entire farm was received by Ricky from the Howards before Nancy forwarded the final contract with the Newells to Ricky. This was nearly two years after the entry of the original judgment and the date that Ricky was due to receive his equitable distribution from the marital estate.

¶ 24    Under these circumstances, we hold that the circuit court was enforcing, but not modifying, the original judgment by compelling the parties to appear for the closing on the sale of the entire farm to the purchasers, the Howards, with the highest offer. Once the entire farm was sold, Nancy would retain the first $31,000 from the sale, and then, after payment of costs and the mortgage, the remaining balance of sale would be equally divided between Nancy and Ricky. Therefore, the circuit court was enforcing Nancy's obligation under the original judgment to sell the entire farm and settle the marital estate. This enforcement was within the "indefinite jurisdiction" of the circuit court. See *In re Marriage of O'Malley*, 2016 IL App (1st) 151118, ¶ 42; *In re Marriage of Hall*, 404 Ill. App. 3d at 164; *In re Marriage of Allen*, 343 Ill. App. 3d at 412-13. As a result, the circuit court properly denied the relief requested by Nancy in her motion pertaining to section 2-1401 of the Code.

¶ 25                                    III. CONCLUSION
¶ 26    The judgment of the circuit court of Knox County is affirmed.

¶ 27    Affirmed.