NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 220297-U

NO. 4-22-0297

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 17, 2023
Carla Bender
4th District Appellate
Court, IL

| | |
|---|---|
| *In re* MARRIAGE OF | ) Appeal from the |
| | ) Circuit Court of |
| RICKY WARNER, | ) Knox County |
|     Petitioner-Appellee, | ) No. 12D22 |
|     and | ) |
| NANCY WARNER, | ) Honorable |
|     Respondent-Appellant. | ) James G. Baber, |
| | ) Judge Presiding. |

---

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Turner and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The appellate court affirmed the judgment of the trial court denying respondent's motion to enforce the final judgment distributing marital property, which sought to vacate orders respondent alleged improperly modified the property distribution, because the court's orders enforced the final judgment, which was within the court's inherent authority.

¶ 2    In 2012, petitioner, Ricky Warner, filed a petition for the dissolution of his 15-year marriage to respondent, Nancy Warner. In May 2015, as part of the trial court's division of marital property in the original judgment of dissolution, the court awarded Nancy an 80-acre tract of land and required her to (1) sell or refinance the land in a timely manner and (2) pay Ricky his equitable share of the proceeds. However, several years of litigation ensued concerning the execution of the court's judgment.

¶ 3    In June 2017, Nancy identified Roger and Julie Newell as potential buyers. However, by December 2017, when Nancy had not yet sold the land to the Newells, Ricky brought

to the trial court's attention an offer made by Brian and Julie Howard to purchase the land at a significantly greater price. In January 2018, the court directed Nancy to sell the land to the Howards. In response, Nancy filed a motion to enforce the original judgment, claiming the trial court improperly modified the original judgment by ordering the sale to the Howards. The court denied Nancy's motion, and in April 2020, the Third District Appellate Court affirmed. *In re Marriage of Warner*, 2020 IL App (3d) 190198, ¶ 24, 151 N.E.3d 220.

¶ 4        Nonetheless, Nancy continued to challenge the sale of the land to the Howards and, as a result, the trial court entered further orders concerning the sale to the Howards. In January 2022, Nancy filed another motion to enforce the original judgment of dissolution, alleging that the court's post-appeal orders directing the sale to the Howards (1) improperly modified the original judgment and (2) should be vacated.

¶ 5        In March 2022, the trial court denied Nancy's motion.

¶ 6        Nancy appeals, arguing that the trial court erred by denying her motion because the court (1) lacked jurisdiction to order a sale of the marital property that was contrary to the terms of the original judgment, (2) incorrectly applied the law-of-the-case doctrine to enforce a real estate contract for specific performance, and (3) misapplied the declaratory judgment statute by incorporating an unopposed declaratory judgment order into the divorce case. Nancy also argues her due process rights were violated.

¶ 7        We disagree and affirm.

¶ 8                              I. BACKGROUND

¶ 9         A. The Divorce Proceedings and Final Judgment of Dissolution

¶ 10        In 2012, Ricky filed a petition to dissolve his 15-year marriage to Nancy.

¶ 11        In May 2015, following a contested hearing, the trial court sent the parties an

opinion letter resolving all disputed issues, including the disposition of an 80-acre tract of real estate that included 60 acres of tillable land, outbuildings, a small amount of hay acreage, and the marital residence. The court found that the entire tract had an appraised value of $569,200. After deducting the mortgage ($78,611), broker's commission, and sales costs, $460,000 remained for distribution. Of that amount, the court determined that Nancy would receive $260,000 and Ricky $200,000 because Ricky had received a disproportionate share of other marital assets.

¶ 12        As part of the opinion letter, the trial court awarded the entire farm to Nancy but ordered that Nancy either (1) obtain a loan or (2) sell the tillable acres to pay Ricky his $200,000 share of the marital property by December 31, 2015. If Nancy did not make the payment by the specified date, 7% interest would begin to accrue. The court ordered Nancy to operate in good faith to sell or refinance the property in a timely manner.

¶ 13        The trial court further ordered as follows:

> "If Nancy finds that either of these two options [(loan or sale of tillable acres)] is unfeasible, she may sell the farm in its entirety and after the costs of sale are paid and mortgage paid, may deduct for herself an additional $31,000 from the proceeds. The remaining balance shall be split 50/50 between the parties."

(We note that the $31,000 figure represented the amount Ricky would have to pay Nancy to offset his disproportionate share of the remaining marital assets.)

¶ 14        In December 2015, the trial court entered a final judgment of dissolution of marriage, which incorporated all of the court's findings and orders set forth in the May 2015 opinion letter.

¶ 15        In October 2016, pursuant to a motion to reconsider or clarify the judgment filed by Nancy, the trial court entered an order which stated, in relevant part, as follows:

"The Judgment [of Dissolution] shall be modified as follows:

In order to resolve the distribution of assets which establishes that [Ricky] receive a disproportionate share, he owes [Nancy] the sum of $31,000.00 to offset his increased share. [Nancy] shall receive a credit in the amount of $31,000.00 from the proceeds of the marital real estate without taking into account the cost of sale. If [Nancy] actually sells any portion of the acreage to obtain funds to pay [Ricky] his share under the order, any capital gains arising out of the sale shall be split 50/50 between the parties upon proper documentation from [Nancy] to [Ricky]."

¶ 16                                B. The Newells' Offer

¶ 17            In June 2017, Nancy filed a "Motion to Compel Cooperation With Real Estate Sales Contract" in which she sought an order (1) approving the sale of the entire 80-acre tract to Roger and Julie Newell (the current lessees of the tillable acres) for $369,000 and (2) compelling Ricky to sign the sales contract with the Newells. Under the contract with the Newells, Ricky's net proceeds from the sale would be $110,250. Nancy also alleged that she had a verbal agreement with the Newells to repurchase the home and 13 acres for $75,000. Nancy attached to her motion a letter from a real estate broker estimating a sales price of $380,000 for the entire tract.

¶ 18            In September 2017, following a hearing, the trial court entered a written order granting Nancy's motion and ordering Ricky to attend the closing and convey his ownership interest in the property to the Newells.

¶ 19                                C. The Howards' Offer

¶ 20            In December 2017, Ricky filed his own "Motion to Compel Cooperation for Sale of Real Estate." Ricky alleged that (1) the property had not yet been sold to the Newells and (2) Ricky had received an offer from Ryan and Julie Howard to purchase the entire tract for

- 4 -

$456,000 or, alternatively, the home and 20 acres for $175,000. Ricky alleged that both offers were for substantially more than the $369,000 offer from the Newells. Ricky asked the court to enter an order requiring Nancy to cooperate with the sale of the land to the Howards to maximize the value for the benefit of the parties and their children.

¶ 21 In January 2018, Ricky amended his motion to allege that the Howards were also willing to grant Nancy the right to purchase or retain the residence and five acres for $90,000.

¶ 22 Later that month, following a hearing, the trial court granted Ricky's motion, finding that the offer made by the Howards would maximize the sale of the parties' real estate while allowing Nancy to continue to reside in the family home with Nancy and Ricky's daughter. The court noted that because Nancy declined to sign the sales contract that had been prepared by the Howards' attorney, which had been attached to Ricky's motion, the court affixed its own signature to the contract, authorizing the sale.

¶ 23 In March 2018, Nancy filed a motion to reconsider the trial court's order authorizing the sale to the Howards.

¶ 24 Later that month, the trial court entered an order denying Nancy's motion and finding that "[Nancy], in possession of the largest part of the marital estate, is defending the status quo through procrastination and intransigence. *** This is not a difficult case. The house and farm are marital property subject to division. The court has ordered the division. [Nancy] has impeded the sale." Due to Nancy's lack of cooperation, the court also ordered that the closing would take place in open court at a date and time to be set by Ricky so the court could sign any necessary documents.

¶ 25 D. Nancy's First Motion To Enforce the Original Judgment of Dissolution

¶ 26 In March 2019, Ricky filed a notice scheduling the in-court closing of the sale.

Eight days later, Nancy filed a "Motion to Enforce Judgment of Divorce" pursuant to section 510(b) of the Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510(b) (West 2018)) and section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2018)). Nancy argued that the trial court's orders compelling the sale of the real estate to the Howards improperly modified the original judgment of dissolution in violation of section 510(b) of the Act because the orders were (1) inconsistent with the court's original award of the property to Nancy and (2) entered after the court's plenary power ended. As a result, Nancy argued, the court's orders entered after October 27, 2018 "were entered without subject matter jurisdiction and should be vacated."

¶ 27     In April 2019, the trial court entered a written order denying Nancy's motion. The court first set out the lengthy and contentious history of the case and then explained as follows:

> "This Court is not modifying the Judgment [of Dissolution] in any material way. The Judgment compelled [Nancy] to sell the property and make an equalization payment. She could not or would not perform. The reasons why she did not perform were heard by the Court over several months and multiple hearings. It is one month shy of four years since the Court authored the Opinion letter requiring the sale and [Nancy] is asking the Court to simply go back to 2015, have [Ricky] sign a quit-claim deed, and rely again on [Nancy's] good faith to sell the property. On this point, [Nancy's] attorney advised that she did not know if the Newells were still interested in making the purchase and suggested that the Howards were acceptable purchasers if they were the highest bidders.

> Reliance on good faith efforts did not work before, and that is precisely why we are at the point where the Court has previously authorized a sale to the Howards.

- 6 -

The Court has no confidence or reason to think anything has changed."

The court ordered the parties to attend a closing to effectuate the sale of the property and reserved the right to sign in place of either of the parties if they failed to appear.

¶ 28                                    E. The First Appeal

¶ 29        In April 2019, Nancy appealed, arguing that the trial court's postjudgment orders facilitating the sale of the farm improperly modified the original judgment of dissolution under section 510(b) of the Act. The Third District Appellate Court (1) construed Nancy's motion to enforce judgment as a section 2-1401 petition to vacate the trial court's postjudgment orders and (2) disagreed with Nancy that the trial court's orders modified the original judgment. *Warner*, 2020 IL App (3d) 190198, ¶¶ 20-21.

¶ 30        The appellate court observed that, after Nancy was unable to either (1) sell only the tillable acres or (2) secure a loan to pay Ricky his $200,000 distribution, the original order required her to sell the entire farm. *Id.* ¶ 21. Then court then noted that is well-established in Illinois law that (1) a trial court has "indefinite jurisdiction" to enforce its judgments (*In re Marriage of O'Malley*, 2016 IL App (1st) 151118, ¶ 42) and (2) a modification occurs under section 510(b) of the Act when new obligations are engrafted onto a party under the order (*In re Marriage of Davis*, 292 Ill. App. 3d 802, 807 (1987)). *Warner*, 2020 IL App (3d) 190198, ¶ 22.

¶ 31        The appellate court concluded as follows:

>        "[W]e hold that the circuit court was enforcing, but not modifying, the original judgment by compelling the parties to appear for the closing on the sale of the entire farm to the purchasers, the Howards, with the highest offer. Once the entire farm was sold, Nancy would retain the first $31,000 from the sale, and then, after payment of costs and the mortgage, the remaining balance of sale would be

equally divided between Nancy and Ricky. Therefore, the circuit court was enforcing Nancy's obligation under the original judgment to sell the entire farm and settle the marital estate. This enforcement was within the 'indefinite jurisdiction' of the circuit court. [Citations.] As a result, the circuit court properly denied the relief requested by Nancy in her motion pertaining to section 2-1401 of the Code [of Civil Procedure (735 ILCS 5/2-1401 (West 2018))]." *Warner*, 2020 IL App (3d) 190198, ¶ 24.

¶ 32 The Third District filed its opinion affirming the trial court's postjudgment orders directing the sale of the farm to the Howards on April 22, 2020.

¶ 33 F. The Post-Appeal Proceedings

¶ 34 After Nancy's appeal was resolved, she continued to challenge the sale to the Howards. On September 22, 2020, Nancy filed a "Motion to Vacate Post-Judgment Orders and Compel Cooperation with Two-Parcel Sale of Real Estate," again seeking to (1) vacate the trial court's orders entered January 2018, March 2018, and April 2019, which facilitated the sale to the Howards and (2) compel Ricky to cooperate with (a) the sale of 13 acres and the residence to the parties' son, Benjamin Warner, for $110,000 and (b) the sale of the remainder of the acres at auction. Ricky filed a written response, arguing that Nancy's motion was barred by the doctrine of *res judicata*. Ricky also filed a "Motion for Judicial Deed," asking the court to execute a judicial deed transferring ownership of the farm to the Howards.

¶ 35 On October 26, 2020, the trial court entered a written order denying Nancy's motion to vacate and granting Ricky's motion for a judicial deed. The court set the closing for December 18, 2020, at the Knox County Courthouse.

¶ 36 On December 16, 2020, the trial court denied Nancy's motion to reconsider and

found that the Howard contract remained in effect. Although the court denied Nancy's motion to reconsider, it granted her request to extend the closing date to January 20, 2021.

¶ 37 On January 25, 2021, the trial court entered a written order continuing the closing date until further order of the court, pending resolution of a title insurance issue. Namely, Nancy and Ricky's son, Benjamin, had claimed an interest in the real estate and filed a complaint for declaratory judgment in Knox County circuit court case No. 21-MR-12.

¶ 38 On August 26, 2021, Ricky filed a motion alleging that the trial court in case No. 21-MR-12 had ordered that "[t]he issues of [Nancy's] option in the Howard contract, her current possession of a part of the acreage, and the tenant's possession of the farm acreage shall be addressed in [the divorce case.]" Ricky sent notice of hearing for September 7, 2021.

¶ 39 Nancy moved to continue, alleging improper notice, and the trial court granted her motion. The court ordered the parties to coordinate a mutually agreeable time for a hearing on Ricky's motion.

¶ 40 On October 26, 2021, the trial court entered a written order granting Ricky's motion to set a closing date. The court specifically found that "the Howard contract [continues] to be the primary enforceable contract in 21-MR-12, which, except for the possible option of [Nancy to retain or purchase five acres and the residence] requires sellers to deliver complete and immediate possession at closing." The court (1) set the closing for January 6, 2022, at the Knox County Courthouse, (2) ordered Nancy to advise her attorney in writing before November 15, 2021, if she chose to exercise her option, and (3) ordered that Ricky "shall have $31,000 deducted from his net proceeds which shall be added to [Nancy's] net proceeds as equalization of property distribution pursuant to [prior orders]."

¶ 41  G. Nancy's Second Motion To Enforce the Judgment of Divorce

- 9 -

¶ 42　　　　　On January 6, 2022, Nancy *pro se* filed a "Motion to Enforce Final Judgment," alleging that the trial court's orders entered after April 22, 2020, were entered without subject matter jurisdiction because they improperly modified the final judgment (the original judgment of dissolution), in violation of section 510(b) of the Act. Nancy requested that the court (1) enforce the original judgment of dissolution, (2) order Ricky to execute a quit-claim deed, and (3) "vacate all orders entered after April 22, 2020, which modify the terms of the Final Judgment."

¶ 43　　　　　On March 8, 2022, the trial court conducted a hearing on Nancy's motion. Ricky's attorney, acknowledging that Nancy was representing herself, argued that (1) Nancy's motion to enforce judgment was in the nature of a section 2-1401 petition to vacate a prior judgment and (2) Nancy had not set forth either (a) a meritorious defense or (b) newly discovered facts. Ricky's attorney further argued that the court's orders, like those entered prior to the Third District's decision, were "just an attempt *** from the bench to try to enforce its orders."

¶ 44　　　　　In response, Nancy agreed that her motion was a section 2-1401 petition and stated that the motion was "[v]ery similar really to what we did—my attorney did the first time." Nancy maintained that the court's October 26, 2021, order did not match the final judgment.

¶ 45　　　　　At the conclusion of the hearing, the trial court denied Nancy's motion to enforce the final judgment without comment, noting only that it was familiar with the history of the case.

¶ 46　　　　　This appeal followed.

¶ 47　　　　　　　　　　　　　　　II. ANALYSIS

¶ 48　　　　　Nancy appeals, arguing that the trial court erred by denying her motion to enforce the judgment of dissolution because the court (1) lacked jurisdiction to order a sale of the marital property that was contrary to the terms of the original judgment, (2) incorrectly applied the law of the case doctrine to enforce a real estate contract for specific performance, and (3) misapplied the

declaratory judgment act by incorporating an unopposed declaratory judgment order into the divorce case. Nancy also argues her due process rights were violated.

¶ 49    We disagree and affirm.

¶ 50                              A. The Applicable Law

¶ 51    Under section 510(b) of the Act, "[t]he provisions as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this State." 750 ILCS 5/510(b) (West 2020). Nonetheless, "a distinction exists between enforcement and modification of an order." *In re Marriage of Figliulo*, 2015 IL App (1st) 140290, ¶ 11, 46 N.E.3d 1147. That is to say, "although the trial court loses jurisdiction to amend a judgment after 30 days from entry, it retains indefinite jurisdiction to enforce the judgment." *In re Marriage of Allen*, 343 Ill. App. 3d 410, 412, 798 N.E.2d 135, 137 (2003); see *In re Marriage of Hall*, 404 Ill. App. 3d 160, 164, 935 N.E.2d 522, 526 (2010) (same); *In re Marriage of Krilich*, 2023 IL App (1st) 221198, ¶ 14 ("It is an elementary principle of law that a court is vested with the inherent power to enforce its orders.").

¶ 52    "Whether a trial court has jurisdiction is a question of law, subject to *de novo* review." *Hall*, 404 Ill. App. 3d at 164.

¶ 53                              B. This Case

¶ 54    1. *The Trial Court's Orders Did Not Modify the Original Judgment of Dissolution*

¶ 55    Nancy contends that the trial court "lacked jurisdiction to thwart her sale that was compliant with the final judgment and proceed instead on a sale that was contrary to the final judgment." She contends that this appeal "applies to proceedings subsequent to entry of the April 11, 2019 order, which is that last order that has been considered by a reviewing court and resolved by mandate issued April 22, 2020."

¶ 56 Specifically, Nancy contends that (1) "the court's orders entered on October 26, 2020, December 16, 2020, and October 2[6], 2021 unreasonably delay[ed] the sale of the entire property *** and they allow[ed] a sale of less than the entire property without a payment of $200,000 to Ricky", (2) the court's October 26, 2021, order added new obligations (a) of immediate possession of the residence at closing and (b) to cancel the existing farm lease prior to closing, and (3) the October 2020 and October 2021 orders disregarded the provision in the original judgment that the sale maximize the value of the marital property because the court ordered a sale that ignored the fluctuation of the market value of tillable acres.

¶ 57 As Nancy concedes in her brief, the law of the case doctrine "bars relitigation of an issue previously decided in the same case and encompasses not only the court's explicit decisions, but those issues decided by necessary implication." (Internal quotation marks omitted.) *In re Marriage of Hundley*, 2019 IL App (4th) 180380, ¶ 52, 125 N.E.3d 509. "When an appellate court decides a question of law, that decision ordinarily binds both the trial court on remand and the appellate court in a subsequent appeal." *Id.*

¶ 58 In the present case, the Third District decided that the trial court's postjudgment orders directing the sale of the marital property to the Howards constituted the trial court's enforcement of its judgment of dissolution dividing the marital property and not an improper modification of that judgment. *Warner*, 2020 IL App (3d) 190198, ¶ 21. Not only do we agree with the conclusion of the Third District, due to the law of the case doctrine, we are bound by its conclusion that the trial court's orders facilitating the sale to the Howards were a proper exercise of the court's inherent authority to enforce its judgments.

¶ 59 We have reviewed Nancy's claims of error and conclude that the trial court's orders entered after those affirmed by the Third District continue to facilitate the sale of the marital estate

to the Howards and constitute enforcement of its original judgment.

¶ 60 In particular, the October 26, 2020, order merely reaffirmed the trial court's prior orders, which were affirmed on appeal, directing the sale of the entire tract to the Howards. The December 16, 2020, order merely denied Nancy's motion to reconsider the October 26, 2020, order. And the October 26, 2021, order merely granted Ricky's motion to set a closing date to consummate the sale to the Howards. The requirements of termination of the current lease and immediate occupation were not new obligations but became necessary for the court to enumerate in its order due to Nancy's delay and refusal to exercise good faith and cooperation in the sale of the farmland.

¶ 61 Nancy has provided no authority supporting any of her claims that the trial court's orders amounted to improper modifications of the original judgment. To the contrary, each order of which Nancy complains was necessary for the court to enforce its order that Nancy sell the marital property and pay Ricky his equitable share.

¶ 62 We emphasize that the trial court originally ordered that Nancy exercise good faith to refinance or sell the marital estate in a timely manner. However, the record demonstrates that she has done the opposite; Nancy has delayed and obstructed the sale at every turn, and her efforts have required the court to issue increasingly detailed orders to accomplish the object of its original judgment—namely, the sale of the marital property and equitable division of the proceeds. That the court has been required to issue these orders of which Nancy now complains is a problem of her own making. She has not complied with the court's order that she operate in good faith.

¶ 63 2. *Nancy's Other Claims and Failure to Comply with Illinois Supreme Court Rule 341(h)*

¶ 64 Nancy's remaining claims of error—namely, that the trial court erroneously applied

the law of the case doctrine, misapplied provisions of the declaratory judgment statute, and violated her due process rights—are mere contentions made without citation to authority. See Ill. S. Ct. R. 341(h) (eff. Oct. 1, 2020) (stating an appellant's argument "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"). The purpose of the rules concerning appellate briefs, such as Rule 341(h), is "to require parties before a reviewing court to present clear and orderly arguments so that the court can properly ascertain and dispose of the issues involved." *Hall v. Naper Gold Hospitality, LLC*, 2012 IL App (2d) 111151, ¶ 7, 969 N.E.2d 930. "Mere contentions, without argument or citation to authority, do not merit consideration on appeal." *Id.*

¶ 65        We also note that Nancy has repeatedly flouted the requirement of Rule 341(h) that her "Statement of Facts" state the facts necessary to an understanding of the case "accurately and fairly without argument or comment." Nancy's statement of facts is best characterized as an "airing of grievances" that includes factual assertions irrelevant to the issues on appeal. For instance, Nancy begins her statement of facts by writing, "Ricky Warner has a history of domestic violence, which involved physical, emotional, and economic abuse throughout the marriage. More than 60 counseling sessions failed to remediate Ricky's infirmity." Such assertions, which reflect nothing more than the acrimonious personal history of the parties' marriage and divorce, are irrelevant to the specific matters she has brought in this appeal.

¶ 66        We conclude by reminding the parties that the courts of this state may take measures "to restrain litigants from maintaining vexatious litigation." *People v. Moore*, 2023 IL App (4th) 210245, ¶ 24 (citing *People v. Austin*, 2014 IL App (4th) 140408, ¶ 23, 23 N.E.3d 615). For example, Illinois Supreme Court Rules 137(a) (eff. Jan. 1, 2018) and 375(b) (eff. Feb. 1, 1994), confer upon the trial courts and appellate courts, respectively, broad authority to impose monetary

sanctions on parties who have filed motions, pleadings, or appeals that are intended to harass or cause unnecessary delay. *Moore*, 2023 IL App (4th) 210245, ¶¶ 70-71, 75. Such sanctions may include the payment to the other party of reasonable expenses incurred due to the improper filing. *Id.* ¶ 71.

¶ 67                                          III. CONCLUSION

¶ 68            For the reasons stated, we conclude that the trial court did not err by denying Nancy's motion to enforce the final judgment.

¶ 69            Affirmed.